# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLISON KORMAN, | : | CIVIL NO: 3:21-CV-01516 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE | : | |
| HONSEDALE BARRACKS, *et al*., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I. Introduction.

Plaintiff Allison Korman claims that a Pennsylvania State Police Trooper violated her rights by, among other things, charging her with harassment for purposely taking down her mask and coughing at a Dollar General store during the height of the COVID-19 pandemic.  Currently pending is the defendants' motion to dismiss Korman's amended complaint.  For the reasons set forth below, we will grant in part and deny in part that motion.  We will also grant Korman leave to file a second amended complaint.

## II.  Background and Procedural History.

Korman, proceeding pro se, began this action by filing a complaint in the Court of Common Pleas of Wayne County, Pennsylvania, naming as defendants the Pennsylvania State Police Honesdale Barracks and Trooper Nicholas Scochin, and broadly asserting claims of libel, slander, and civil rights violations. *Doc.1-2*. The defendants removed the case to this court, and then filed a motion for a more definite statement. *See docs. 1, 5*.  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 16*.

We granted the defendants' motion for a more definite statement, and we ordered Korman to file an amended complaint that sets forth a more definite statement of her claim or claims. *Doc. 19*.  To assist Korman in filing an amended complaint, we set forth the basic pleading standards of Fed. R. Civ. P. 8. *Doc. 18* at 6–9.  We also noted that to the extent that Korman is considering suing the Pennsylvania State Police ("PSP"), the PSP would have Eleventh Amendment immunity, and we explained why. *Id*. at 10–13.  We further explained to Korman that liability in a 42 U.S.C. § 1983 action is personal in nature, cannot be based on *respondeat superior*, and to be liable, a defendant must have been personally involved in the wrongful conduct. *Id*. at 13–15.

2

## A. The Amended Complaint.

On June 21, 2022, Korman filed an amended complaint. *See doc. 24*. She again names the Pennsylvania State Police Honesdale Barracks and Trooper Scochin as the defendants. *Id*. at 1. The amended complaint is rambling and difficult to understand in parts, but we have done our best to try to understand and piece together what Korman is alleging. Construing the amended complaint liberally, Korman alleges the following.

### 1. History in Wayne County.

Although the crux of the amended complaint is based on an event that occurred on October 3, 2020, at a Dollar General store in Hamlin, Pennsylvania, the amended complaint touches on events from 2008 to 2021. Korman mentions numerous incidents that she has had with the police and others in Wayne County since 2008. In particular, she mentions that she was convicted of drug charges in 2008 or 2009, that she has been labeled a crack dealer, that Keith Rynearson "did a mock arrest" on her and took photos of her tattoos, that she submitted a rape report in 2017, and that she has been harassed by various people for various reasons over the years. *Doc. 24* ¶¶ 6, 50, 52–54, 57–59. She alleges that she recently found out that she had pleaded guilty to crack cocaine charges, and this has taken a toll on her PTSD and mental and emotional state. *Id*. ¶ 59. And she alleges that her

reputation has been damaged by the libel against her, including being labeled a crack dealer and a harasser who coughs in the faces of those who do not wear masks. *Id*. ¶ 59. She also asserts that the stress relating to her dealings with Trooper Scochin and others in Wayne County over the years has contributed to her eye disease. *Id*. ¶ 58.

### 2. The Incident at the Dollar General.

While Korman was in the check-out line at the Dollar General on October 3, 2020, a woman in front of her coughed on the candy display directly in front of a sign stating that masks were mandatory inside the store due to a state mandate. *Doc. 24* ¶¶ 15–16. The woman was not wearing a mask. *Id*. Korman expressed her concern, and this led to a verbal confrontation between Korman and the woman, who said she doesn't have to wear a mask and who called Korman "a stupid bitch who believes in hoaxes and lies." *Id*. ¶¶ 18–19. Other customers chimed in and also called Korman a stupid bitch. *Id*. ¶ 20. Korman responded by "express[ing] how . . . President Trump just caught the 'fake virus' and it isn't a hoax or lies." *Id*. ¶ 21. Korman was told to '"shut the fuck up already' and 'leave.'" *Id*. Feeling uncomfortable, Korman decided to leave the store without completing her purchase. *Id*. ¶¶ 19, 21–22.

But before Korman left, she decided to try to teach the woman and other

customers a lesson by lowering her mask and "fake cough[ing] in the air." *Id*. ¶ 22.

She describes what she did as follows:

> . . . Before exiting, I wanted to express my thoughts about how
> the virus can spread so easily in the air.  I decided to stop in
> front of the front door before I left and teach a lesson.  I am
> sorry I decided to act like the teacher I am.  I told those three
> people (more than six feet away) that all it takes is a cough in
> the air to get sick.  You walk through it and breath [sic] in virus
> particles.  I decided to lower my mask and fake cough in the air.
> I then explained to them that the cough can linger, and now
> they have to walk through it to leave the store.  That is how it
> can spread so easily and be inhaled to cause damage.  I told
> them I was not sick though, so they don't have to worry like I
> was doing.

*Id*.  This evoked a hostile reaction from the others, who again swore at Korman and

told her to leave. *Id*. ¶ 23.

The incident spilled over into the parking lot of the Dollar General.  While

the woman who had coughed on the candy was standing by her own car, Korman

pulled her car up to the woman. *Id*. ¶ 24  Although Korman's car was behind the

other woman's car, according to Korman, she did not block the woman from

leaving, and the woman "had space to back out in front of [her] vehicle and make a

K turn." *Id*.  While Korman was in her car speaking to the woman, another

customer came out of the Dollar General and starting to yell at the woman about

treating Korman cruelly. *Id*. ¶ 25.  The woman then said that she was calling the

police and reporting harassment. *Id*.  According to Korman, the woman said,

"Watch what happens' because [Korman] blocked her in." *Id*.  Two additional customers walked by and heard that the woman was calling the police. *Id*. ¶ 26. They encouraged her to tell the police that Korman had coughed in her face. *Id*. But, according to Korman, "[t]hat was untrue and never happened." *Id*.

The woman told the police that Korman was blocking her in, and she started to take down Korman's license plate number. *Id*. ¶ 27.  Korman then drove away, parked next door, and also called the police. *Id*. ¶ 22.  According to Korman, by then, the woman had given the police her license plate number and had lied about the incident. *Id*.  Korman spoke on the phone with Trooper Scochin. *Id*. ¶ 29.  She started the conversation by asking him if he knew who she was "because of [her] son's father ([her] rape report)." *Id*.  Trooper Scochin said that he did not know who Korman was, but he said that he knew what she had done. *Id*.  According to Korman, Trooper Scochin did not explain what he had been told, and he had not reviewed video evidence of the incident. *Id*.

Korman then explained her side of the story. *Id*. ¶ 30.  Trooper Scochin told her that she was too sensitive, that she should not have been bothered by being called a stupid bitch, and that he is frequently called an asshole, but it does not bother him. *Id*.  He also told her that she "had no right to express [her] point of view about the virus by coughing into the air, and that in itself was wrong to do because after [she] did it, [she] pulled up to a car and questioned someone about

it." *Id*.  But Trooper Scochin did not tell Korman that she was being charged with harassment or that she "was being accused of coughing directly in someone's face on purpose to intimidate and harass them." *Id*.  Rather, he only told her that she would get a ticket in the mail with a fine anywhere between $50.00 to $150.00. *Id*. During this call, with the help of his barrack's database, Trooper Scochin noticed that Korman's registration had expired less than 90 days earlier, but he did tell her that, and she was unaware of that. *Id*. ¶ 31.

### 3.  The Public Information Release Report.

According to Korman, after her call with Trooper Scochin, he created "a public information release report" that implied that she had coughed in someone's face. *Id*. ¶ 33.  Korman attached a copy of this report to her amended complaint. *See doc. 24* at 25.  In addition to containing Trooper Scochin's name, listing the nature of the incident as "Harass Physical Contact," listing Korman as the arrestee, and listing her age, gender, general area of residence as well as such information for the "victim," the report contains a section titled "INCIDENT DETAILS," which reads:

> On the above date an incident occurred at the Hamlin Dollar General in Salem Township Wayne County.  The defendant Allison KORMAN 38 YO/F of Lakeville PA coughed in the victims face due to the victim not having a mask on in the store. The victim related she did have a medical condition with a

doctor's note, not requiring her to wear one.  KORMAN cited
with harassment.

*Id*.  Characterizing the above as libel, Korman states that it was published on
numerous websites. *Id*. ¶ 34.[1]

### 4.  The Citation/Summons.

According to Korman, after her phone call with Trooper Scochin on October
3, 2020, he created a non-traffic citation/summons that stated that she had
confessed to coughing in someone's face. *Id*. ¶ 32.  The description of the incident
in the citation/summons, which Korman also attached as an exhibit to her amended
complaint, reads:

> IN THAT, on or about said date, THE DEFENDANT, with
> intent to harass, annoy or alarm another person, namely (Carrie
> CORDELL), did strike, shove, kick or otherwise subject such
> other person to physical contact, or did attempt or threaten to do
> the same, in that THE DEFENDANT did (admit to coughing on
> the victim during the Covid19 pandemic while in the store), in
> violation of Section 2709(a)(1) of the PA Crimes Code.

*Doc. 24* at 26.  The citation/summons lists the total fine as $462.25. *Id*.

Although Trooper Scochin never met Korman in person nor asked her
ethnicity, in the citation/summons, he lists Korman's ethnicity as "NOT OF

---

[1] Korman also alleges that Trooper Scochin stated publicly that he arrested
her, and numerous newspaper articles stated that bail was set, but was not known.
*Id*. ¶ 34.

HISPANIC ORIGIN." *Id*. ¶ 32.  This even though Korman, who is Afro-Rican, told him that she speaks Spanish. *Id*.

### 5. Phone Calls.

On October 6, 2020, after being informed that she was in the news again, Korman called Trooper Scochin and left him a message asking why he lied for the newspaper, why he refused to look at the video evidence, and stating that she felt like she was the one that was being harassed. *Id*. ¶ 37.  On October 8, 2020, at 3:18 a.m., Trooper Scochin called Korman's cell phone and left a 17-second message. *Id*. ¶ 38.  He called back at 3:19 a.m., and Korman answered. *Id*.  Korman describes that phone call as follows:

> Scochin kept me on the phone for 14 minutes talking about breast cancer and how he can't make people wear a mask.  He laughed at me on the phone numerous times and kept saying my first name over and over.  He asked me why I thought he was harassing me.  We ended the call on a really bad note.  He said that if I was unhappy with his charges that I could plead not guilty and fight them.

*Id*. ¶ 39.

### 6. Expired Registration.

On October 21, 2020, Trooper Scochin pulled Korman over for having an expired registration. *Id*. ¶ 40.  After Korman asked him if he knew Keith Rynearson, Trooper Scochin said he was friends with Rynearson, and he

mentioned a backpack in Korman's back seat. *Id.*   He issued Korman a ticket for having a registration "OVER 90 days expired." *Id.*   Trooper Scochin refused to unfold the ticket for Korman even though she told him that she was visually impaired in one eye and asked him to read the ticket to her. *Id.* ¶ 40.  According to Korman, while explaining the fine and looking inside Korman's car, Trooper Scochin hid his name from her. *Id.*

At some point while still on the side of the road, Korman figured out that it was Trooper Scochin who gave her the ticket for the expired registration, and she called the Honesdale Barracks and talked to a supervisor named Brian Rickard. *Id.* ¶ 41.  She asked Rickard why Trooper Scochin did not tell her earlier that she had an expired registration, and Rickard said that Trooper Scochin did not have to and that she was being paranoid for thinking that Trooper Scochin was stalking and harassing her. *Id.*  Korman also asked Rickard why no one would go look at the video from the Dollar General incident, and Rickard said that "no one had any right to go look at any video evidence located in a business because it would be an 'invasion of privacy.'" *Id.*[2]  Rickard also told Korman that 3:00 a.m. phone calls are protocol and not wrong. *Id.* ¶ 41.

---

[2] Korman asserts that she does not understand why Trooper Scochin could not get the video given that another officer, Keith Rynearson, used video evidence obtained hours after a crime to convict someone of a crime. *Doc. 24* ¶ 42.

Korman pleaded not guilty to having a registration over 90 days expired. *Id.*

¶ 48.  She showed proof that her registration had been expired for less than 90

days. *Id.*  Judge Edwards agreed that Trooper Scochin had listed the wrong amount

for the fine, and he lowered the fine amount. *Id.*  During the court proceeding, the

Judge reprimanded Trooper Scochin for laughing at Korman. *Id.*  "The hearing

ended with [Korman] crying to the clerk about feeling abused in court always and

Judge Edwards telling [her] to go complain to the Honesdale Barracks." *Id.*

### 7. Judicial Proceedings Relating to the Dollar General Incident.

Korman alleges that Trooper Scochin waited until October 5, 2020, to go to

local magisterial district judge Bonnie Carney to assess the true amount of the fine

for the Dollar General incident. *Id.* ¶ 33.  Korman points out that as to the assertion

that she confessed, the Public Information Release Repot and the citation/summons

do not match. *Id.* ¶ 32.  According to Korman, Trooper Scochin told Judge Carney

that she had confessed to a crime, even though the newspaper had a different story.

*Id.* ¶ 33.  Korman alleges that the crime that Trooper Scochin "helped fabricate had

sufficient video evidence that he refused to look at, and obtain for court." *Id.*

Korman also believes that Trooper Scochin told Judge Carney that "his

cousin had an unpaid ticket with [Korman] and that [Korman is] known as a crack

dealer in Wayne County." *Id.*  And she alleges that Judge "Carney had already

signed off on such charges about [her] in 2009." *Id*.  Korman denies that she "confessed to such a deliberate action like [Scochin] told Judge Carney." *Id*. ¶ 35.

Korman asserts that she had two court dates with Trooper Scochin and the woman from the Dollar General incident. *Id*. ¶ 44.  During the first court date, the judge threatened Korman with a higher fine and jail time. *Id*.  And both Trooper Scochin and the woman "lied terribly in court under oath." *Id*.  According to Korman, they had no witnesses, no evidence, there was no probable cause, and they fabricated a motive. *Id*.  After questioning Trooper Scochin and the woman, Korman requested a continuance, which the court granted. *Id*. ¶ 44.  Korman then obtained legal counsel so that she could obtain the video evidence, and although she paid her counsel $1,500, she was not successful in obtaining that evidence. *Id*.

At the second court date with Trooper Scochin and the woman from the Dollar General incident, Korman's lawyer was able to prove that the woman lied about Korman spitting on her, coughing on her, trying to hit her, and starting a fight with her. *Id*. ¶ 45.  According to Korman, her lawyer "proved everything [the woman] said was false and intentionally fabricated to hurt [her] maliciously." *Id*. Korman alleges that her "charge was put on probation" and "[a]fter 10 months (October to August), it was dismissed by the Judge." *Id*.  She also alleges that the

charge against her was "dismissed, 10 months after the fabrication was generated[.]" *Id*. ¶ 52.[3]

### 8.  Korman's Assertions Regarding the Woman from the Dollar General Incident, and Korman's Attempts to Sue Her.

Korman asserts that she has reason to believe that Trooper Scochin is very friendly with the woman from the Dollar General who fabricated the charges against her. *Id*. ¶ 43.[4]  Korman also asserts that the woman's father died of brain disease on October 18, 2020, after she frequented many stores unmasked and then went home to her father, with whom she lived. *Id*. ¶ 43.  Korman suggests that the woman thus had a reason to create a problem with her when questioned about her behavior. *Id*.  Korman also asserts that the woman is not a kind person, and that the manager of the Dollar General has had many complaints about her. *Id*.

---

[3] At other points in her amended complaint, Korman asserts that the charge was dismissed. *See doc. 24* ¶¶ 47  At still other points, she says she was put on probation. *See id*. ¶ 51.  And she mentions her sentencing being delayed. *See id*. ¶ 51.  Although Korman's allegations are not entirely clear, construing the amended complaint liberally in Korman's favor, we construe Korman to be alleging that the charge against her was dismissed without her being convicted. This is also how the defendants construe Korman's allegations. *See doc. 34* at 14.

[4] Korman does not allege what the reason is that leads her to believe this.

Although Korman tried to sue the woman from the Dollar General incident, at first, she was told[5] to withdraw her filing or she would "be found guilty of the summary crime because suing proved [she] was a harasser and coughed on someone." *Id*. ¶ 46.  After the charge against her was dismissed, Korman again filed a lawsuit against the woman, but Judge Carney, who has been biased against Korman since 2009, laughed at her and dismissed the lawsuit. *Id*.  Without explaining how, Korman alleges that Trooper Scochin contributed to Judge Carney's "most recent nasty and mean unlawful bias against [her]." *Id*.

### 9.  The Claims in the Amended Complaint.

Korman presents state and federal claims.  The amended complaint contains nine counts.  It contains counts premised on the First Amendment (Count 1), the Fifth Amendment (Count 2), the Sixth Amendment (Count 3), the Eighth Amendment (Count 4), and the Ninth Amendment (Count 5).  She also presents state-law claims for negligence (Count 6), intentional infliction of emotional distress (Count 7), negligent training, supervision, and retention (Count 8), and vicarious liability (Count 9).

---

[5] Korman does not allege who told her this, but from the context of her allegations, it appears it may have been Judge Carney. *See Doc. 24* ¶ 46.

14

Korman is seeking declaratory and injunctive relief as well as compensatory and punitive damages. *Id.* ¶¶ 61–62.

### B.  The Motion to Dismiss.

On August 4, 2022, the defendants filed a motion to dismiss the amended complaint. *See doc. 27.*  After the defendants filed their brief in support of their motion to dismiss, Korman filed a brief in opposition. *See docs. 34,38.*  The defendants have not filed a reply brief.

### III.  Subject-Matter Jurisdiction.

"The Court ha[s] 'an independent obligation to determine whether subject-matter jurisdiction exist[s], even in the absence of a challenge from any party.'" *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019) (quoting *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016)).  We recognize that there are issues regarding whether this court has subject-matter jurisdiction over some of Korman's claims.  Thus, before addressing the defendants' argument under Fed. R. Civ. P. 12(b)(6), we will examine whether this court has subject-matter jurisdiction despite the defendants' failure to brief that issue.

### A.  The Eleventh Amendment bars the claims against the Pennsylvania State Police Honesdale Barracks.

The Eleventh Amendment bars Korman's claims against the Pennsylvania State Police Honesdale Barracks.  And because the Eleventh Amendment bars those claims, this court lacks subject-matter jurisdiction over those claims.  Thus, we will dismiss Korman's claims against the Pennsylvania State Police Honesdale Barracks without prejudice for lack of subject-matter jurisdiction.

The Eleventh Amendment implicates the court's subject-matter jurisdiction. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996) (noting that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction"); *but see Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction").  Thus, '[t]he court may consider Eleventh Amendment issues *sua sponte*, but is not required to do so." *Zulueta v. Chuckas*, No. 1:18-CV-356, 2018 WL 5814689, at *2 (M.D. Pa. Nov. 6, 2018).

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).  That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

"Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). It "serves two fundamental imperatives: safeguarding the dignity of the states and

ensuring their financial solvency." *Id*.  It serves those interests by barring suits against nonconsenting states. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (stating that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").  "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency.[6]  First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).  Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

---

[6] Additionally, under *Ex parte Young*, claims against a state official in his or her official capacity for prospective declaratory or injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).  But *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993).

Neither of those circumstances are present here.  The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal court."). And 42 U.S.C. §1983, under which Korman brings her federal claims, does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).

"The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania." *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022).  As an arm of the state, the PSP is entitled to Eleventh Amendment immunity.[7]   And the Pennsylvania State Police Honesdale Barracks "is not an entity separate and distinct from" the PSP, rather it "is a branch of" of the PSP. *Durham v. United States*, 9 F. Supp. 2d 503, 506 (M.D. Pa. 1998).  In other words,

---

[7] As noted above, under *Ex parte Young*, claims against a state official in his or her official capacity for prospective declaratory or injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908). We address Korman's claims for declaratory and injunctive relief against Trooper Scochin in his official capacity later in this Memorandum Opinion.

a barracks of the PSP and the PSP "are one and the same[.]" *Id*.  And because the

PSP is entitled to Eleventh Amendment immunity, it follows that so is the

Pennsylvania State Police Honesdale Barracks. *See id*. (concluding that "because

the Swiftwater Barracks and the State Police Department are one and the same, and

because the State Police Department is entitled to sovereign immunity, the

Swiftwater barracks is not a proper defendant and will be dismissed from this

action"); *Martin v. Rucinski*, No. CV 20-108, 2020 WL 7480932, at *2 (W.D. Pa.

Oct. 8, 2020) (report and recommendation recommending that the claims against

the Uniontown Barracks of the PSP be dismissed based on the Eleventh

Amendment), *report and recommendation adopted*, 2020 WL 7424977, at *1

(W.D. Pa. Dec. 18, 2020).

Because Korman's claims against the Pennsylvania State Police Honesdale

Barracks are barred by the Eleventh Amendment, we will dismiss those claims

without prejudice for lack of subject-matter jurisdiction. *See New Jersey*

*Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (noting

that the "dismissal for lack of subject matter jurisdiction was by definition without

prejudice"); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999)

(agreeing with plaintiff that because a dismissal for lack of subject-matter

jurisdiction "is not an adjudication on the merits," such a dismissal should be

"without prejudice").

**B.  The Eleventh Amendment also bars the claims for damages against Trooper Scochin in his official capacity.**

Claims for damages against a state official in his official capacity are barred by the Eleventh Amendment.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978).  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc.*, 730 F.3d at 318.  Thus, Korman's claims for damages against Trooper Scochin in his official capacity are barred by the Eleventh Amendment.  As such, we will dismiss those claims without prejudice for lack of subject-matter jurisdiction.

**C.  Because *Ex Parte Young* does not apply, Korman's claims for declaratory and injunctive relief against Trooper Scochin in his official capacity are also barred by the Eleventh Amendment.**

Although claims against state officials in their official capacities for damages are barred by the Eleventh Amendment, under *Ex parte Young*, claims against state officials in their official capacities for prospective declaratory and injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).  Here, Korman has sued Trooper Scochin in his official

capacity for declaratory and injunctive relief.  She seeks a declaration "declaring that what happened to [her] over the years to be unlawful and wrong." *Doc. 24* ¶ 61.  She also states that she wants her "name cleared of libel and false convictions." *Id.*   Thus, it appears that she is seeking some type of injunctive relief.  She does not, however, specify what type of injunctive relief she is seeking.

In determining if *Ex parte Young* applies, the court "must look to the substance rather than the form of the relief requested to determine whether [the] claims are barred by the Eleventh Amendment." *Blanciak*, 77 F.3d at 698.  And "[t]he type of prospective relief permitted under *Young* is relief intended to prevent a continuing violation of federal law." *Hindes v. F.D.I.C.*, 137 F.3d 148, 166 (3d Cir. 1998); *see also Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (observing that "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing").  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997) (concurring opinion)).

Here, Korman does not allege an ongoing violation of federal law.  Rather, she complains about what Trooper Scochin (and others) did to her in the past. Thus, Korman is not truly seeking prospective declaratory[8] or injunctive relief, and *Ex parte Young* does not apply.  Accordingly, Korman's claims against Trooper Scochin in his official capacity for declaratory and injunctive relief are barred by the Eleventh Amendment.

## IV.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

Having addressed the Eleventh Amendment issues, we now turn to Trooper Scochin's arguments[9] in support of his motion to dismiss the amended complaint. After setting forth the pleading standards and the standards for deciding a Rule

---

[8] "The purpose of a declaratory judgment is to 'declare the rights of litigants.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  Although "[t]here is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights[,]" a "[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity." *Wenzig v. Serv. Emps. Int'l Union Loc. 668*, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019), *aff'd sub nom. Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020). "The remedy is thus by definition prospective in nature." *CMR D.N. Corp.*, 703 F.3d at 628.

[9] The arguments were made by both defendants.  But because, as discussed above the claims against the Pennsylvania State Police Honesdale Barracks are barred by the Eleventh Amendment, from here on out, we refer to the arguments as Trooper Scochin's arguments.

12(b)(6) motion to dismiss, we conclude that some of those arguments have merit, and some do not.

## A. Pleading and Fed. R. Civ. P. 12(b)(6) Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's

24

claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

#### B.  Discussion.

At the outset, we note that Korman appears to fundamentally misunderstand the nature and limits of a Fed. R. Civ. P. 12(b)(6) motion.  She includes factual assertions in her brief that are not contained in her amended complaint. *Compare doc. 24* (passim), with *doc. 38* (passim).  She also attached exhibits to her brief. *See doc. 38* at 14–15.  But, as the standards set forth above show, a Rule 12(b)(6)

26

motion is limited to determining whether Korman has pleaded a claim upon which relief can be granted, and in making that determination we do not consider documents, such as documentary exhibits, outside the operative complaint. Thus, we will not consider the exhibits Korman attaches to her brief. Similarly, "[a]lthough a court on a motion to dismiss ordinarily 'must accept the allegations in the complaint as true,' it is not compelled to accept assertions in a brief without support in the pleadings." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (quoting *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013)). "After all, a brief is not a pleading." *Id*. Thus, we do not accept the factual assertions in Korman's brief that do not appear in her amended complaint.

### 1. Federal Claims for Damages Against Trooper Scochin in his Individual Capacity.

Korman brings her federal claims against Trooper Scochin in his individual capacity pursuant to 42 U.S.C. § 1983.[10] "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146

---

[10] Korman does not specifically mention suing Trooper Scochin in his individual capacity. But because she is seeking damages and because she can only obtain damages from him in his individual capacity, we construe her to be suing him in his individual capacity.

(3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### a.  The First Amendment.

Korman brings a claim under the First Amendment.  The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.  Trooper Scochin construes Korman's First Amendment claim as a claim of retaliatory prosecution, and Korman does not dispute that characterization.  Given this and because that is the most reasonable construction of the claim, we also construe Korman's First Amendment claim as a claim of retaliatory prosecution.

"[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1949 (2018).  "Official reprisal for protected speech

'offends the Constitution [because] it threatens to inhibit exercise of the protected right[.]'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588, n. 10 (1998)).  "A plaintiff claiming retaliation must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising h[er] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 429 (3d Cir. 2020) (quoting *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017)).

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]" *Hartman,* 547 U.S. at 256.  When a retaliation claim is based on a criminal prosecution, a plaintiff must also plead and prove lack of probable cause. *Id.* at 265–66; *see also Mucy v. Nagy*, No. CV 20-1950, 2023 WL 1108390, at *10 (W.D. Pa. Jan. 30, 2023) (concluding that the requirement to plead and prove lack of probable cause applies in the "retaliatory citation" context and citing cases for that proposition).

Trooper Scochin contends that Korman fails to state a First Amendment retaliatory prosecution claim upon which relief can be granted because she fails to sufficiently allege that he lacked probable cause to issue the citations/summons.

Korman, on the other hand, alleges that all she did was cough in the air to prove a point and that Trooper Scochin did not have probable cause to charge her with harassment for such.  We cannot conclude as a matter of law based on the allegations in the amended complaint that Trooper Scochin had probable cause.

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause . . . exists when the facts and circumstances within the . . . officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person . . . ." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  In other words, "'[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'" *Williams v. City of York,* 967 F.3d 252, 263 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016)).

"In determining probable cause, . . . officers must consider plainly exculpatory evidence in addition to inculpatory evidence." *Harvard v. Cesnalis*, 973 F.3d 190, 200 (3d Cir. 2020).  "This is true 'even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000)).  Nevertheless, "some 'unreliability or exculpatory evidence' will not 'fatally undermine[ ]' probable

cause otherwise established." *Dempsey*, 834 F.3d at 478 (footnote omitted)

(quoting *Wilson*, 212 F.3d at 790).  Thus, while "a positive identification by a

victim witness, without more, would usually be sufficient to establish probable

cause," "[i]ndependent exculpatory evidence or substantial evidence of the

witness's own unreliability that is known by the . . .  officer[s] could outweigh the

identification such that probable cause would not exist." *Wilson*, 212 F.3d at 790.

"Each case must therefore be examined on its facts." *Id*.

     In determining if there was probable cause, "we examine only the

information available to the officer at the [relevant] time." *Dempsey*, 834 F.3d at

480.  "After-acquired evidence, however significant for trial, does not inform" our

determination of what the officer knew at the time. *Id*.  Thus, the "focus[] is on the

information the officer[] had available to [him], not on whether the information

resulted from exemplary police work." *Orsatti*, 71 F.3d at 484.  And an officer is

"not required to undertake an exhaustive investigation in order to validate the

probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch.*

*Dist.*, 211 F.3d 782, 790 n.8  (3d Cir. 2000).  Further, the probable cause "standard

does not require that officers correctly resolve conflicting evidence or that their

determinations of credibility, were, in retrospect, accurate." *Wright v. City of*

*Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005).

"Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).  It is a "significantly lower" standard than the standard required for a conviction, and "[i]t is therefore irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which she or he was arrested." *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) (internal quotations and citations omitted). Moreover, the "probable cause inquiry is entirely objective." *Id*. (footnote omitted).  Thus, "an . . . officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

"[T]he Court has eschewed 'any rigid demand that specific "tests" be satisfied' and has instead prescribed a 'totality-of-the-circumstances approach' to the probable cause determination." *Dempsey*, 834 F.3d at 467–68 (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)).  Because the probable cause "determination is necessarily fact-intensive, . . . it will usually be appropriate for a jury to determine whether probable cause existed." *Id.* at 468.  Nevertheless, the court may determine as a matter of law that there was probable cause if the facts alleged by the plaintiff, viewed in the light most favorable to the plaintiff, " reasonably would not support a contrary factual finding.'" *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

32

The citation/summons issued by Trooper Scochin charged Korman with violating 18 Pa. C.S.A. § 2709(a)(1). *See doc. 24* at 26. Section 2709(a)(1) provides:

> **Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

*Id*. But "[t]his section shall not apply to constitutionally protected activity." 18 Pa. C.S.A. § 2709(e).

Trooper Scochin argument's regarding probable cause is not clear. Although Trooper Scochin points out that Korman was cited for harassment, not for violating a mask mandate, he does not show how the information that Korman alleges that he possessed at the time that he issued the citation/summons to her satisfies the elements of the charge of harassment. In fact, he does not even cite to the harassment statute.

Trooper Scochin does point out that Korman alleges that both she and the woman from the Dollar General told him their versions the events. And he asserts that "Korman simply does not attempt to show that the conflicting statements available to Trooper Scochin did not give rise to a 'fair probability' that she had committed the underlying crime." *Doc. 23* at 22–23 (quoting *Dempsey*, 834 F.3d at

467).  But other than Korman alleging that the woman told Trooper Scochin[11] on the phone that Korman was blocking her in with her car, *see doc. 24* ¶ 27, we do not know what the woman told Trooper Scochin.  And Trooper Scochin makes no attempt to show how Korman blocking the woman with her car would satisfy the elements of § 2709(a)(1).

Further, Korman alleges that Trooper Scochin told her that she was wrong to cough in the air and then pull her car up to the woman and question her. *Id*. ¶ 30. And she alleges that Trooper Scochin did not tell her that she was being accused of coughing directly in someone's face. *Id*.  Given these allegations and construing the facts alleged in the light most favorable to Korman, we cannot conclude at this stage of the proceedings that the woman told Trooper Scochin a story that substantially differed from Korman's version of the coughing incident.  And Trooper Scochin makes no attempt to show how Korman coughing in the air to prove a point would satisfy the elements of § 2709(a)(1).

We acknowledge that Korman does allege that at her second court date, her attorney was able to prove that the woman lied about Korman "spitting on her, coughing on her, trying to hit her and start a fight with her." *Id*. ¶ 45.  But this

---

[11] Korman alleges that the woman called the Honesdale Barracks. *Doc. 24* ¶ 27.  We do not know to whom she spoke.  But since Korman alleges that when she called, she spoke to Trooper Scochin and he said he knew what she had done, we assume that the other woman spoke to Trooper Scochin or that Scochin was privy to what she had said.

occurred after the citation/summons was issued and at the end of the prosecution. And there are no allegations that the woman told Trooper Scochin those alleged lies before he issued the citation/summons.

In sum, viewing the facts alleged by Korman in the light most favorable to her, we cannot conclude as a matter of law that Trooper Scochin had probable cause to issue the citation/summons to her and prosecute her for violation of § 2709(a)(1). Thus, as probable cause is the only element of the retaliatory prosecution claim that Trooper Scochin addresses, we will not dismiss Korman's First Amendment claim.[12]

### b.  The Fifth Amendment.

Korman also asserts Fifth Amendment claims in her amended complaint. The Fifth Amendment contains several clauses. It appears that Korman is asserting claims based on the Double Jeopardy Clause, the Self-Incrimination Clause, and the Due Process Clause of the Fifth Amendment.

The Double Jeopardy Clause of the Fifth Amendment, which provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of

---

[12] Trooper Scochin has not addressed whether the usual requirement of pleading and proving lack of probable cause in a retaliatory prosecution claim still applies when the statute at issue specifically provides (as does the Pennsylvania statute at issue here) that it does not apply to constitutionally protected activity. *See* 18 Pa. C.S.A. § 2709(e). That will be an issue for a later stage of the proceedings.

life or limb," U.S. Const. amend. V, "is applicable to the States through the Fourteenth Amendment," *Benton v. Maryland*, 395 U.S. 784, 787 (1969).  The Clause protects against, among other things, "'multiple punishments for the same offense' imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  "To assess whether two crimes constitute the 'same offense' for double jeopardy purposes," *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 230 (3d Cir. 2017), courts use the *Blockburger* test, set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932).  "That is, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Wilkerson*, 871 F.3d at 230 (quoting *Blockburger*, 284 U.S. at 304).  "If this test yields 'only one' offense, 'cumulative sentences are not permitted, unless elsewhere specially authorized by Congress.'" *Id.* (quoting *Whalen v. United States*, 445 U.S. 684, 693 (1980)).

Invoking the Double Jeopardy Clause, Korman contends that Trooper Scochin had knowledge of her background and "used an unpaid ticket that his cousin issued to [her] years prior as leverage to judge the person [she is] and retaliate against [her] for getting his cousin in trouble for a 2017 incident with

P.S.P." *Doc. 24* ¶ 50.  Korman's allegations do not, however, implicate the Double Jeopardy Clause.

The Fifth Amendment also provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.  This clause, which protects against self-incrimination, is applicable to the states through the Fourteenth Amendment. *Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022).  "This Clause 'permits a person to refuse to testify against himself at a criminal trial in which he is a defendant' and 'also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Id*. (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).  It also "bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion." *Id*.  Here, Korman does not allege facts suggesting that Trooper Scochin violated her Fifth Amendment right against self-incrimination.

The Fifth Amendment also provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Due Process Clause of the Fifth Amendment, however, applies only to the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995).  "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id.*  Thus, as Trooper Scochin is

37

a state employee, the Due Process Clause of the Fifth Amendment is not

applicable.[13]

In sum, the amended complaint fails to state a Fifth Amendment claim upon

which relief can be granted.

### c.  The Sixth Amendment.

Korman also seeks to bring a claim under the Sixth Amendment, which

provides:

> In all criminal prosecutions, the accused shall enjoy the right to
> a speedy and public trial, by an impartial jury of the State and
> district wherein the crime shall have been committed, which
> district shall have been previously ascertained by law, and to be
> informed of the nature and cause of the accusation; to be
> confronted with the witnesses against him; to have compulsory

---

[13] Although the Due Process Clause of the Fifth Amendment is not applicable to state officers such as Trooper Scochin, the Due Process Clause of the Fourteenth Amendment is.  Korman claims that Trooper Scochin falsely stated that she confessed.  In other words, she claims that Trooper Scochin falsified evidence. Although Korman has not pleaded a Fourteenth Amendment due process fabrication of evidence claim, as discussed below, we will grant her leave to amend to attempt to do so.  We also note that Trooper Scochin construes Korman's Fifth Amendment claims as asserting a claim based on *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady*, which involved the prosecution withholding a statement by a witness admitting to the murder of which Brady was convicted, the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.  Here, Korman is complaining that Trooper Scochin failed to obtain the video of the Dollar General incident, not that he suppressed that evidence.  Thus, we do not construe Korman to be asserting a *Brady* claim.  In any event, a *Brady* claim here would be based on the Fourteenth Amendment, not the Fifth Amendment.

process for obtaining witnesses in his favor, and to have the
Assistance of Counsel for his defence.

U.S. Const. amend. VI.

Although the nature of Korman's claim is not clear, Korman complains
about having to wait ten months before the charges against her were dismissed.
Thus, she may be attempting to bring a Sixth Amendment speedy trial claim. "In
assessing a constitutional speedy trial claim, we apply a four-factor test." *Kennedy
v. Superintendent Dallas SCI*, 50 F.4th 377, 382 (3d Cir. 2022). "We weigh the
'[l]ength of delay, the reason for the delay, the defendant's assertion of his right,
and prejudice to the defendant." *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 530
(1972)). "'All factors must be considered and weighed as no one factor is
dispositive nor talismanic.'" *Id*. (quoting *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d
Cir. 1993)). Here, Korman does not allege facts that suggest she was denied a
speedy trial or that Trooper Scochin was responsible for any delay in the criminal
proceedings. In fact, she alleges that she herself requested a continuance of the
proceedings, which request was granted. Thus, any attempt to raise a Sixth
Amendment speedy trial claim fails.

Korman also complains that Trooper Scochin did not tell her on the phone
that she was going to be charged with coughing in someone's face. But because
Korman alleges that she received the citation/summons that set forth the charge, to

39

the extent she is attempting to claim that she was denied her Sixth Amendment right "to be informed of the nature and cause of the accusation," such attempt is without merit.

In sum, the amended complaint fails to state a Sixth Amendment claim upon which relief can be granted.[14]

### d. The Eighth Amendment.

Korman also refers to the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Korman does not allege that she was subject to bail or that a fine was imposed on her. Further, "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (footnote omitted (quoting *Graham v. Connor,* 490 U.S. 386, 392 n. 6 (1989)). Because Korman does not allege that she was convicted and sentenced, any claim

---

[14] Korman also mentions that Scochin maliciously said she had confessed and that he "tainted the judge with lies of probable cause and a motive." *Doc. 24* ¶ 51. Although Korman does not specifically set forth a Fourth Amendment claim of malicious prosecution or a Due Process claim of fabrication of evidence, it appears that she may have intended to do so. As noted above, we will grant Korman leave to file a second amended complaint to attempt to state a due process claim based on fabrication of evidence. We will also grant her leave to amend to attempt to state a Fourth Amendment malicious prosecution claim.

based on the Eighth Amendment's Cruel and Unusual Punishments Clause is without merit.  In sum, the amended complaint fails to state an Eighth Amendment claim upon which relief can be granted.

### e. The Ninth Amendment.

Korman also mentions the Ninth Amendment, which provides that the "enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.  She does not, however, explain how the Ninth Amendment is applicable here.  And "we are not aware of any support for [Korman's] claim that the Ninth Amendment protects against any of the events described in [her] complaint." *Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009).  Further, "'the Ninth Amendment refers only to unenumerated rights, while claims under § 1983 must be premised on specific constitutional guarantees.'" *Gibson v. Pennsylvania Pub. Utilities Comm'n*, No. 1:15-CV-00855, 2015 WL 3952777, at *6 (M.D. Pa. June 18, 2015) (quoting *Bussey v. Phillips,* 419 F. Supp.2d 569, 586 (S.D.N.Y. 2006)); *see also Clayworth v. Luzerne Cnty.*, 513 F. App'x 134, 137 (3d Cir. 2013) (observing that "[t]he Ninth Amendment does not independently provide a source of individual constitutional rights").  Thus, the amended complaint fails to state a Ninth Amendment claim upon which relief can be granted.

### C.  State-Law Claims Against Trooper Scochin.

Trooper Scochin contends that Korman's state-law claims are barred by sovereign immunity.  At this early stage of the proceedings, we cannot determine whether sovereign immunity bars Korman's state-law claims.

Sovereign immunity bars claims against the Commonwealth, its agencies, and its employees acting within the scope of their duties. *See* 1 Pa. Cons. Stat. Ann. § 2310.  But Pennsylvania law waives sovereign immunity in ten limited circumstances.  These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. Cons. Stat. Ann. § 8522(b).  The exceptions to the Commonwealth's sovereign immunity must be strictly construed because the legislature waived immunity only in specific situations. *Moser v. Heistand,* 681 A.2d 1322, 1326 (Pa. 1996).

We agree with Trooper Scochin that Korman's state-law claims are not included among § 8522's exceptions to sovereign immunity, and Korman does not argue otherwise.  Thus, if Trooper Scochin was acting within the scope of his

employment, he is entitled to sovereign immunity.  Korman contends, however, that Trooper Scochin was not acting within the scope of his employment.

"Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'" *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000).  "According to the Restatement, 'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . .'" *Id.* (quoting Restatement (Second) Agency § 228).  "Additionally, 'if force is intentionally used by the employee against another,' courts must consider[] whether 'it is not *unexpected* by the employer.'" *DeGroat v. Cavallaro*, No. 3:16-CV-1186, 2017 WL 2152376, at *4 (M.D. Pa. May 17, 2017) (emphasis in original) (quoting *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988)).  "On the other hand, an employee's conduct 'is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Just v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019) (quoting Restatement (Second) Agency § 228(2)).

For conduct "'to be within the scope of employment, [the]conduct must be of the same general nature as that authorized, or incidental to that authorized." *Id.* (quoting Restatement (Second) Agency § 229(1)).  In making that determination,

43

numerous facts should be considered. *Id*. (observing that Restatement (Second) Agency § 229(2) lists ten facts to be considered).  Further, "'an act, although forbidden, or done in a forbidden manner, may be within the scope of employment[,]" as may an action that is "consciously criminal or tortious." *Id.* (quoting Restatement (Second) Agency §§ 230, 231).  But "'an act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." *Id. (*quoting Restatement (Second) Agency § 235).  And "[i]ntentional torts that are 'unprovoked, unnecessary or unjustified by security concerns or penological goals' do not, as a matter of law, fall within the scope of employment." *Minyard v. City of Philadelphia*, No. CIV.A. 11-246, 2012 WL 3090973, at *6 (E.D. Pa. July 31, 2012) (quoting *Wesley v. Hollis*, 2007 WL 1655483, at *15 (E.D. Pa. June 6, 2007)).  Additionally, "[s]ince an employee is generally authorized to use only 'reasonable' measures to achieve a result desired by his or her employer, an 'outrageous' act may lie beyond the scope of his or her employment even where it constitutes 'a means of accomplishing an authorized result.'" *Zion v. Nassan*, 283 F.R.D. 247, 267 (W.D. Pa. 2012) (quoting *Lunn v. Yellow Cab Co.*, 403 Pa. 231 (1961)), *aff'd*, 556 F. App'x 103 (3d Cir. 2014)).  In other words, "[a] high degree of 'outrageousness' can take an employee's actions 'outside the scope' of his or

44

her employment." *Id.* (quoting *Haas v. Barto*, 829 F. Supp. 729, 734 (M.D. Pa. 1993)).

The inquiry about whether conduct was within the scope of the actor's employment is "fact-intensive." *Just*, 208 A.3d at 1060.  And "whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury." *Id*. at 1068.  Only "where neither the facts nor the inferences to be drawn from them are in dispute[,]" may the court "decide the scope of employment question as a matter of law." *Id*.  "Moreover, because sovereign immunity is an affirmative defense, the defendant carries the burden at trial of proving that his conduct was within the scope of his employment." *Id*. (internal citation omitted).

Given the fact-intensive nature of the analysis of whether conduct was within the scope of the actor's employment, sovereign immunity is not warranted in every circumstance for PSP troopers and officers. *See, e.g., Weimer v. Cnty. of Fayette, Pennsylvania*, No. CV 17-1265, 2022 WL 2819025, at *26 (W.D. Pa. July 19, 2022) (denying summary judgment on the basis of sovereign immunity where there were disputes of fact about whether PSP corporal facilitated false statements from potential witnesses or otherwise intentionally failed to disclose material exculpatory evidence), *appeal docketed*, No. 22-2363 (3d Cir. July 28, 2022). *Mucy v. Nagy*, No. CV 20-1950, 2021 WL 3370792, at *12 (W.D. Pa. Aug. 3,

45

2021) (denying motion to dismiss based on sovereign immunity where the plaintiff alleged that citations issued by PSP trooper were in retaliation for the plaintiff's exercise of his rights to freedom of speech and to right to remain silent and that the trooper lacked probable cause for the citations); *Lockhoff v. Slonaker*, No. CV 16-2893, 2017 WL 2423790, at *16 (E.D. Pa. June 5, 2017) (denying summary judgment to PSP trooper as to state-law malicious prosecution claim because based on the plaintiff's version of events, the trooper submitted false information and "knowingly submitting false allegations to a prosecutor would not serve the interests of the Pennsylvania State Police or be otherwise justified by a legitimate penological purpose, [and] such activity falls outside a Trooper's scope of employment).

At this early stage of the proceedings and given Korman's assertions that the citation issued by Trooper Scochin was in retaliation for her exercising her First Amendment rights and Trooper Scochin fabricated that she confessed to coughing in the woman's face, it would be premature to conclude that Trooper Scochin was acting within the scope of his employment.  Thus, we will not dismiss the state-law claims against him at this stage of the proceedings.

## V.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  As set forth above, we will dismiss the claims against the Pennsylvania State Police Honesdale Barracks and the claims against Trooper Scochin in his official capacity.  Because such claims are barred by the Eleventh Amendment, it would be futile to allow Korman to amend as to those claims.  We will also dismiss the Fifth, Sixth, Eighth, and Ninth Amendment claims.  Because for the reasons discussed above, those claims are not implicated here, it would also be futile to allow Korman to amend as to those claims.  But as noted above, we will allow Korman to amend, if she so choses and if the facts warrant, to attempt to states a Fourteenth Amendment due process claim based on fabrication of evidence and a Fourth Amendment malicious prosecution claim.  For Korman's benefit, we will briefly set forth some standards as to those claims.

"Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for "corruption of the truth-seeking function of the trial process." *Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d

Cir. 2014) ("We emphatically reject the notion that due process of law permits the police to frame suspects.").  And "[t]here is no meaningful reason why due process protections precluding fabricated evidence should turn on whether or not one is convicted at trial." *Black*, 835 F.3d at 370.  "Accordingly, . . . an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Id.* at 371.  But the Third Circuit has "cautioned . . . that there are 'hurdles facing a plaintiff alleging a due process violation for fabrication of evidence.'" *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 372).  "A plaintiff must demonstrate a 'meaningful connection' between the injury and the use of the fabricated evidence." *Id.* (quoting *Black*, 835 F.3d at 372).  "There is also a requirement that the evidence be 'so significant that it could have affected the outcome of the criminal case.'" *Id.* (quoting *Black*, 835 F.3d at 372).  Further, "the standard required to demonstrate that evidence is fabricated is a 'notable bar.'" *Id. (*quoting *Black*, 835 F.3d at 372).  "[T]testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014).  Thus, "a witness's misidentification should not be regarded as a fabrication in the absence of

persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith." *Id.* And "because we require 'persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith,' we would look for allegations describing such evidence in a pleading designed to survive a motion to dismiss." *Boseman*, 680 F. App'x at 69 (internal citation omitted) (quoting *Black*, 835 F.3d at 372).

To state a malicious prosecution claim, a plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

For Korman's benefit, any second amended complaint must be titled as a second amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a). "The plaintiff is advised that any amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). "It must be a new pleading which stands by itself as an adequate complaint

without reference to the complaint already filed." *Id.* "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* In other words, if a second amended complaint is filed, the original and amended complaints will have no role in the future litigation of this case.

Any second amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure, including the requirements that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3). Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And to the extent it would promote clarity to do so, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

Further, we note some issues regarding joining claims and defendants. Federal Rule of Civil Procedure 18 provides, in pertinent part, that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Thus, when an

action involves only one defendant, a plaintiff may assert every claim he has against that defendant, regardless of whether the claims are factually or legally related to one another, subject only to the limits of federal subject-matter jurisdiction." *Folk v. Bureau of Prisons*, No. 3:18-CV-2252, 2021 WL 922065, at *2 (M.D. Pa. Mar. 10, 2021), *aff'd on other grounds*, No. 21-1543, 2021 WL 3521143, at *4 (3d Cir. Aug. 11, 2021).

But "[w]hen a plaintiff seeks to assert claims against *multiple* defendants, Rule 20 also comes into play." *Id*. (italics in original). "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966)).

Still, the liberal policy of joinder under Rule 20 does not mean that unrelated claims against multiple defendants can be joined in one action. Rather, the requirements of Rule 20(a)(2) regarding joinder of defendants must be satisfied, and that Rule provides that persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "In other words,

51

notwithstanding the broad joinder-of-claims language of Rule 18(a), a plaintiff may join multiple defendants in a single complaint only if he asserts at least one claim linking *all* defendants that (1) arises out of the same transaction or occurrence and (2) involves a common question of law or fact." *Folk*, 2021 WL 922065, at *2 (italics in original).  "That is, there must be at least one common claim against all named defendants." *Id*.

## VI.  Conclusion.

For the foregoing reasons, we will grant in part and deny in part the defendants' motion to dismiss the amended complaint, and we will grant Korman leave to file a second amended complaint.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge