UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALLISON KORMAN,               :    CIVIL NO: 3:21-CV-01516
                              :
              Plaintiff,      :    (Magistrate Judge Schwab)
                              :
        v.                    :
                              :
TROOPER NICHOLAS SCOCHIN,     :
*et al*.,                     :
                              :
              Defendants.     :

## MEMORANDUM OPINION

## I.  Introduction.

Plaintiff Allison Korman sues Pennsylvania State Police Trooper Nicholas
Scochin and former Pennsylvania State Police Sergeant Brian Edward Rickard.
She claims, among other things, that the defendants violated her rights by charging
her with harassment for purposely taking down her mask and coughing at a Dollar
General store during the height of the COVID-19 pandemic and later charging her
for an expired vehicle registration.  Although the operative complaint—the second
amended complaint—is unclear, construing that complaint liberally since Korman
is proceeding pro se, we conclude that Korman brings an array of constitutional
claims: a claim under the First Amendment, multiple claims under the Fourth

Amendment, and multiple due process claims, both substantive and procedural, under the Fourteenth Amendment. She also brings several state-law claims.

Currently pending is the defendants' motion for summary judgment. For the reasons set forth below, we will grant in part and deny in part that motion. More specifically, we will dismiss the claims against the defendants in their official capacities because those claims are barred by the Eleventh Amendment. We will grant summary judgment to defendant Rickard as to all of Korman's federal claims based on his lack of personal involvement. As to defendant Scochin, we will grant summary judgment in his favor as to some of Korman's Fourth Amendment claims and her substantive due process claims. But we will deny defendant Scochin summary judgment as to Korman's First Amendment claim, one of her Fourth Amendment claims, and two of her procedural due process claims. We will grant both defendants summary judgment as to all of Korman's state-law claims, some based on sovereign immunity and some on the merits.

In summary, some federal claims against defendant Scochin will survive the current motion for summary judgment. But because defendant Scochin appears to have been reasonably confused about the nature of Korman's claims given her unclear second amended complaint, we will grant Scochin leave to file another motion for summary judgment as to the claims that survive the current motion.

## II.  Background and Procedural History.

### A. Initial proceedings.

Korman, proceeding pro se, began this action by filing a complaint in the Court of Common Pleas of Wayne County, Pennsylvania, naming as defendants the Pennsylvania State Police Honesdale Barracks and Trooper Scochin, and broadly asserting claims of libel, slander, and civil rights violations. *Doc.1-2*.  The defendants removed the case to this court, and then they filed a motion for a more definite statement. *See docs. 1, 5*.  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 16*.

We granted the defendants' motion for a more definite statement, and we ordered Korman to file an amended complaint. *Doc. 19*.  Korman then filed an amended complaint. *Doc. 24*.  She again named the Pennsylvania State Police Honesdale Barracks and Trooper Scochin as the defendants. *Id*. at 1.  The defendants filed a motion to dismiss the amended complaint, and we granted in part and denied in part that motion. *Docs. 27, 46*.  We also granted Korman leave to file a second amended complaint. *Doc. 46*.

### B.  The Second Amended Complaint.

On March 22, 2023, Korman filed a second amended complaint. *Doc. 50*. The second amended complaint names two defendants: Trooper Scochin and former Sergeant Rickard. *Id*.[1]  Korman alleges that she is a single mother who has resided in Wayne County, Pennsylvania since 2008. *Id*. ¶ 3.  She identifies defendant Scochin as a state police trooper assigned to Troop R in Honesdale, Pennsylvania, and she identifies defendant Rickard as a supervisor of the Honesdale barracks. *Id*. ¶¶ 4–5.

Korman's second amended complaint refers to many people she had contact with and incidents that happened since she moved to Wayne County. *Id. passim*. But her claims against the defendants are based primarily on two incidents—the Dollar General Incident and the Expired Registration Incident—and the events surrounding these incidents.  We briefly summarize Korman's allegations regarding these incidents and the events surrounding these incidents.[2]

---

[1] The second amended complaint initially named Trooper Scochin and John Doe. *Doc. 50*.  But Korman later identified John Doe as Brian Edward Rickard. *Doc. 74*.  And we directed the Clerk of Court to substitute Rickard for John Doe on the docket and to serve him with the second amended complaint. *Doc. 75*.

[2] Because we are past the pleading stage, we do not include an exhaustive summary of the allegations in the second amended complaint.  Nor do we take the allegations in the second amended complaint, which are not made under penalty perjury, as true for the purpose of deciding the defendants' pending motion for summary judgment.  Rather, we only briefly summarize Korman's allegations to

### 1.  The Dollar General Incident.

Korman's second amended complaint arises from an incident at the Dollar

General in Hamlin, Pennsylvania on October 3, 2020, involving coughing during

the COVID-19 pandemic. *Doc. 50* ¶¶ 14–26.  Both Korman and the other woman

involved called the state police and gave their version of the events at issue. *Id*.

¶¶ 27–31.  According to Korman, the other woman lied about the incident. *Id*. ¶ 27.

After speaking with Korman and the other woman, defendant Scochin

created a "public information release report." *Id*. ¶ 33.  Korman attached a copy of

this report to her second amended complaint. *See doc. 50* at 19.  In addition to

containing defendant Scochin's name, listing the nature of the incident as "Harass

Physical Contact," stating the location of the incident, listing Korman as the

arrestee, and listing her age, gender, general area of residence as well as such

information for the "victim"—Carrie Cordell—the report contains a section titled

"INCIDENT DETAILS," which reads:

> On the above date an incident occurred at the Hamlin Dollar
> General in Salem Township Wayne County.  The defendant
> Allison KORMAN 38 YO/F of Lakeville PA coughed in the
> victim[']s face due to the victim not having a mask on in the
> store.  The victim related she did have a medical condition with

provide context for the parties' arguments regarding the pending motion for
summary judgment.

a doctor's note, not requiring her to wear one.  KORMAN cited
with harassment.

*Id*.

On October 3, 2020, defendant Scochin also created a non-traffic

citation/summons. *Id*. ¶ 33.  That citation/summons charged Korman with

harassment, and the description of the incident in the citation/summons, which

Korman also attached as an exhibit to her second amended complaint, reads:

> IN THAT, on or about said date, THE DEFENDANT, with
> intent to harass, annoy or alarm another person, namely (Carrie
> CORDELL), did strike, shove, kick or otherwise subject such
> other person to physical contact, or did attempt or threaten to do
> the same, in that THE DEFENDANT did (admit to coughing on
> the victim during the Covid19 pandemic while in the store), in
> violation of Section 2709(a)(1) of the PA Crimes Code.

*Doc. 50* at 20.

Characterizing the above public information release report and

citation/summons as libel, Korman states that they are still available on the

internet. *Id*. ¶ 34.

Korman alleges that defendant Scochin waited until October 5, 2020, to go

to local magisterial district judge Bonnie Carney to assess the amount of the fine

for the Dollar General Incident. *Id*. ¶ 34.  According to Korman, defendant Scochin

told Judge Carney that she had confessed to a crime. *Id*.  Korman complains that

defendant Scochin failed to obtain video of the incident. *Id*.  She also believes that

defendant Scochin told Judge Carney things about her history in Wayne County.

*Id*. Defendant Scochin was able to get the amount of Korman's fine increased

from what he initially told Korman the fine would be. *Id*. ¶ 36.

On October 6, 2020, after being informed that she was in the news again,

Korman called defendant Scochin, and she left him a message asking why he lied

for the newspaper and why he refused to look at the video evidence. *Id*. ¶ 37–38.

On October 8, 2020, at 3:18 a.m., defendant Scochin called Korman's cell phone

and left a 17-second message. *Id*. ¶ 39. He called back at 3:19 a.m., and Korman

answered. *Id*. Korman describes that phone call as follows:

> Scochin kept me on the phone for 14 minutes talking about
> breast cancer and how he can't make people wear a mask. He
> laughed at me on the phone numerous times and kept saying my
> first name over and over. We ended the call on a really bad
> note. He said that if I was unhappy with his charges that I
> could plead not guilty and fight them.

*Id*. ¶ 40.

Korman asserts that she had two court dates with defendant Scochin and the

woman from the Dollar General Incident. *Id*. ¶ 45. During the first court date, the

judge threatened Korman with a higher fine and jail time. *Id*. And both defendant

Scochin and the woman "lied terribly in court." *Id*. According to Korman, they

had no witnesses, there was no evidence, and there was no probable cause. *Id*.

After questioning defendant Scochin and the woman, Korman requested a

continuance, which the court granted. *Id*. Korman then obtained legal counsel so

that she could obtain the video evidence, and although she paid her counsel $1,500, she was not successful in obtaining that evidence. *Id*.

At the second court date with defendant Scochin and the woman from the Dollar General Incident, Korman's lawyer was able to prove that the woman lied about Korman spitting on her, coughing on her, trying to hit her, and starting a fight with her. *Id*. ¶ 46. According to Korman, her lawyer "proved everything [the woman] said was false." *Id*. Korman alleges her "charge was put on probation" and "[a]fter 10 months (October to August), it would be dismissed by the Judge." *Id*. She also alleges that she had to wait 10 months for the judge to dismiss the charge. *Id*. ¶ 48.

### 2. Expired Registration Incident.

Korman alleges that during her October 3, 2020 call with defendant Scochin regarding the Dollar General Incident, although he was able to see that her vehicle registration was expired, defendant Scochin failed to let her know that it was expired. *Id*. ¶ 32. And Korman was unaware that her registration was expired. *Id*.

On October 21, 2020, after following Korman on the highway for over a mile, defendant Scochin pulled Korman over and gave her a ticket for having a registration over 90 days expired. *Id*. ¶ 41. Korman alleges that she then called the Honesdale Barracks and talked to a supervisor—defendant Rickard. *Id*. ¶ 42. She

asked defendant Rickard why defendant Scochin did not tell her earlier that she had an expired registration, and defendant Rickard said that defendant Scochin did not have to and that she was being paranoid for thinking that defendant Scochin was stalking her. *Id*. Korman also asked defendant Rickard why no one would go look at the video from the Dollar General Incident, and he responded that "no one had any right to go look at any video evidence located in a business because it would be an 'invasion of privacy.'" *Id*. Defendant Rickard also told Korman that 3:00 a.m. phone calls are protocol. *Id*.

Korman pleaded not guilty to having a registration over 90 days expired. *Id*. ¶ 49. She showed proof that her registration had been expired for less than 90 days. *Id*. Judge Edwards agreed that defendant Scochin had listed the wrong amount for the fine, and he lowered the fine amount. *Id*. During the court proceeding, the Judge reprimanded defendant Scochin for laughing at Korman. *Id*. "The hearing ended with [Korman] crying to the clerk about feeling abused in court always and Judge Edwards telling [her] to go complain to the Honesdale Barracks." *Id*.

### 3. Claims and Requested Relief.

Korman presents federal and state-law claims. The second amended complaint contains seven counts. It contains claims premised on the First

9

Amendment (Count 1), the Fourth Amendment (Count 2), and the Fourteenth

Amendment (Count 3).  The second amended complaint also contains state-law

claims for negligence (Count 4), intentional infliction of emotional distress (Count

5), negligent training, supervision, and retention (Count 6), and vicarious

liability/respondeat superior (Count 7).

Korman alleges that she has been injured, and she is seeking relief. *Doc. 50*

*¶¶ 58–69.*[3]  She is seeking declaratory and injunctive relief as well as

compensatory and punitive damages. *Id.* *¶¶ 71–72.*

## C.  The Motion for Summary Judgment.

After the defendants filed answers to the second amended complaint and

after the discovery period ended, the defendants filed a motion for summary

judgment, a brief in support of that motion, a statement of material facts, and

supporting documents. *Docs. 112–114.*  Korman requested and received an

extension of time, and after a brief stay, she filed a brief in opposition along with

---

[3] In the sections of her second amended complaint titled "INJURIES" and "RELIEF," Korman alleges facts dealing with her history in Wayne County, Pennsylvania starting in 2008. *Doc. 50* ¶¶ 58–69.  She alleges that the defendants and many other officials and employees in Wayne County are friends or relatives of each other and know of her and her history, including that she made a rape report. *Id.*  But apart from her conclusory allegations that they assisted each other in harassing her, *see id.* ¶¶ 5, 9, 34, 41, 44, 54, 55, 56, 58–69, these allegations appear to have no connection to her claims in this case against defendants Scochin and Rickard.

some supporting documents. *Doc. 123*. The defendants have not filed a reply

brief.[4]

### III. Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal

Rules of Civil Procedure, which provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "Through summary adjudication the court may dispose of those claims that

do not present a 'genuine dispute as to any material fact' and for which a jury trial

would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of*

*Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting

Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of

the basis for its motion and identifying those portions of the record that

demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the

nonmoving party bears the burden of proof, the moving party may discharge that

---

[4] The defendants filed a motion to strike Korman's brief in opposition. *See doc. 126*. By a separate order, we denied that motion.

burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## IV.  The Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried." *Id.*  The "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements," and "[a]ll

14

material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." *Id.* "Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018). "[T]he Rule 'is essential to the Court's resolution of a summary judgment motion' due to its role in 'organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.'" *Id.* (citations omitted).

Here, in accordance with M.D. L.R. Pa. 56.1, the defendants filed a statement of material facts and supporting documents. *Docs. 113, 116.* Korman filed a document titled "Plaintiff's Response in Opposition to Defendant's Statement of Summary Judgment" along with several documents. *Doc. 123.* This document contains argument, and we consider the document as Korman's brief in opposition to the motion for summary judgment. The document does not, however, respond to the statement of material facts set forth by the defendants. Thus, we consider the facts sets forth by the defendants to be undisputed. Considering the above, as well as our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), the

15

following are the material facts upon which we analyze the defendants' motion for summary judgment.

On October 3, 2020, defendant Scochin cited Korman with summary harassment based on an incident where Korman allegedly coughed on another person during the pandemic. *Doc. 113* ¶1.  The victim in the incident called into the Honesdale barracks on October 3, 2020, to tell her side of the story, and that call was recorded. *Id*. ¶2.[5]  Korman also called into the Honesdale barracks to discuss the incident on October 3, 2020, and that call was also recorded. *Id*. ¶ 3.[6] During Korman's call, she admitted to coughing "at" the victim, and "pulling in behind her." *Id*. ¶ 4.

Defendant Scochin is a Trooper with the Pennsylvania State Police, working out of the Honesdale barracks. *Id*. ¶ 5.  Defendant Scochin's involvement with

---

[5] The defendants submitted a recording of this phone call.  The recording is of the caller briefly speaking to a woman, who it appears is the dispatch operator. The recording is not of a call with defendant Scochin.  And although from the allegations it appears that the victim then spoke to defendant Scochin, the defendants have not submitted a recording of that call with defendant Scochin. Nor do they set forth what was said during the call with defendant Scochin.

[6] The defendants submitted a recording of that phone call.  The recording is of the caller briefly speaking to a woman, who it appears is the dispatch operator. The recording is not of a call with defendant Scochin.  And although from the allegations it appears that Korman then spoke to defendant Scochin, the defendants have not submitted a recording of that call with defendant Scochin.  Nor do they set forth what was said during the call with defendant Scochin.

Korman was limited to filing a non-traffic citation for harassment on information received in which Korman was the defendant and citing Korman for driving with a suspended registration. *Id*. ¶ 6.[7]  Defendant Rickard is a former sergeant with the Pennsylvania State Police, and he was working at the Honesdale Barracks from 2018 onwards. *Id*. ¶ 7.  Defendant Rickard was not defendant Scochin's direct supervisor. *Id*. ¶ 8.  Defendant Rickard's only involvement was "reviewing and approving" the non-traffic citation after it had already been filed. *Id*. ¶ 9.

It is standard procedure to do a news release for incidents. *Id*. ¶ 10. Defendant Scochin is not involved in submitting those releases to any news organizations. *Id*. ¶ 11.  Defendant Rickard was not involved in the news release process, as the citation is sometimes not reviewed until afterwards. *Id*. ¶ 12.

On October 23, 2020, defendant Scochin gave Korman a citation for driving on a suspended registration. *Id*. ¶ 13.  Korman admits that her registration was in fact expired at the time. *Id*. ¶ 14.

## V. Discussion.

Korman brings both federal and state-law claims.  We will address her federal claims before addressing her state-law claims.  But before we do so, we

---

[7] Although not set forth the in the defendants' statement of material facts, it is clear from the evidence cited in support of those facts that defendant Scochin was also involved in communications and proceedings related to those citations.

address a threshold question involving the court's subject-matter jurisdiction—the Eleventh Amendment's application to Korman's claims against the defendants in their official capacities.

## A. Eleventh Amendment.

Korman's claims against the defendants in their official capacities are barred by the Eleventh Amendment.   Although the defendants do not explicitly move for summary judgment on that basis,[8] because the Eleventh Amendment implicates the court's subject-matter jurisdiction, we raise the issue sua sponte.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986).  "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler,* 565 U.S. 134, 141 (2012).  Thus, the court has an obligation to satisfy itself that it has subject-matter jurisdiction, and the court may raise the issue sua sponte. *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 77–78 (3d Cir. 2003).

---

[8] The defendants make a passing reference to the Eleventh Amendment in connection with their argument that they are entitled to sovereign immunity as to Korman's state-law claims. *Doc. 114* at 22.  But they do not actually make an argument regarding the Eleventh Amendment.

Korman sues the defendants in their official capacities. *See doc. 50* ¶ 13.
But the Eleventh Amendment shields the defendants in their official capacities
from Korman's claims.

The Eleventh Amendment implicates the court's subject-matter jurisdiction.
*See Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (stating that the Eleventh
Amendment "imposes a jurisdictional bar against individuals bringing suit against
a state or its agencies in federal court, or against a state official in his or her official
capacity"); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human
Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has
'specifically abrogated' the states' sovereign immunity or a state has unequivocally
consented to suit in federal court, we lack jurisdiction to grant relief in such
cases."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996)
(noting that "the Eleventh Amendment is a jurisdictional bar which deprives
federal courts of subject matter jurisdiction"); *but see Lombardo v. Pennsylvania,
Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme
Court's jurisprudence has not been entirely consistent in the view that the Eleventh
Amendment restricts subject matter jurisdiction").

"Our federalist system of government accords respect for the sovereignty of
the States in a variety of ways, including the Eleventh Amendment to the United
States Constitution, which immunizes States from suits brought in federal court by

19

both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another State, or
> by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).  That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

"Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)).  It "serves two fundamental imperatives: safeguarding the dignity of the states and ensuring their financial solvency." *Id*.  It serves those interests by barring suits against nonconsenting states. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (stating that "the Constitution does not provide for federal jurisdiction over

suits against nonconsenting States"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency.  First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).  Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

Neither of those circumstances are present here.  The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal court.").  And 42 U.S.C. §1983, under which Korman brings her federal claims, does not

override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).

"The Eleventh Amendment's protection . . . is not limited to the States alone, but rather extends to entities that function as 'arms of the State.'" *Maliandi*, 845 F.3d at 81. "The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania." *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022). As an arm of the state, the Pennsylvania State Police is entitled to Eleventh Amendment immunity.

Claims for damages against a state official in his official capacity are barred by the Eleventh Amendment. Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc.*, 730 F.3d at 318. Thus, Korman's claims for damages against the defendants in their official capacity are barred by the Eleventh Amendment. As such, we will dismiss those claims without prejudice for lack of subject-matter jurisdiction. *See Mohn v. United States*, No. 23-1023, 2023 WL 4311609, at *2 (3d Cir. July 3, 2023)

22

(observing that "when a district court dismisses claims for lack of subject matter jurisdiction, the dismissal should be without prejudice"); *Merritts v. Richards*, 62 F.4th 764, 772 n.4 (3d Cir. 2023) (noting that "a dismissal with prejudice on a threshold ground [such as lack of subject-matter jurisdiction] should ordinarily be vacated and remanded with instructions for the claim to be dismissed without prejudice").

Although claims against state officials in their official capacities for damages are barred by the Eleventh Amendment, under *Ex parte Young*, claims against state officials in their official capacities for prospective declaratory and injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).  Here, in addition to damages, Korman is seeking declaratory and injunctive relief. *See doc. 50* ¶71.  She seeks a declaration "declaring that what happened to [her] over the years to be unlawful and wrong." *Id*.  She also states that she wants her "name cleared of libel and false convictions." *Id*.  Thus, it appears that she is seeking some type of injunctive relief.  She does not, however, specify what type of injunctive relief she is seeking.

In determining if *Ex parte Young* applies, the court "must look to the substance rather than the form of the relief requested to determine whether [the] claims are barred by the Eleventh Amendment." *Blanciak*, 77 F.3d at 698.  And "[t]he type of prospective relief permitted under *Young* is relief intended to prevent

a continuing violation of federal law." *Hindes v. F.D.I.C.*, 137 F.3d 148, 166 (3d Cir. 1998); *see also Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (observing that "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing"). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997) (concurring opinion)).

Here, Korman does not allege an ongoing violation of federal law. Rather, she complains about what the defendants did to her in the past. Thus, Korman is not truly seeking prospective declaratory[9] or injunctive relief, and *Ex parte Young*

---

[9] "The purpose of a declaratory judgment is to 'declare the rights of litigants.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Although "[t]here is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights[,]" a "[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity." *Wenzig v. Serv. Emps. Int'l Union Loc. 668*, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019), *aff'd sub nom. Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020). "The remedy is thus by definition prospective in nature." *CMR D.N. Corp.*, 703 F.3d at 628.

does not apply.  Accordingly, Korman's claims against the defendants in their official capacities for declaratory and injunctive relief are barred by the Eleventh Amendment.

We turn next to Korman's federal claims against the defendants in their individual capacities.  Before we address the defendants' arguments, we explain why we construe Korman to be bringing her claims against the defendants in their individual capacities even though she only explicitly mentions suing the defendants in their official capacities.

## B. Individual Capacity.

We construe Korman to be asserting her  claims against the defendants in their individual capacities.  Although Korman does not specifically state that she is suing the defendants in their individual capacities, in the Third Circuit, "[c]omplaints need not state explicitly whether individual defendants are sued in their official or individual capacities." *Risser v. Steelton-Highspire Sch. Dist.*, No. 1:17-CV-357, 2017 WL 5625766, at *3 (M.D. Pa. Nov. 22, 2017).  "When a complaint is unclear on this issue, courts are instructed to look to both the complaint and the 'course of proceedings' to determine the liability the plaintiff seeks to impose." *Id*. (quoting *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21, 31 (1991)).  "Courts in this circuit examine several factors when

evaluating whether the complaint should be construed as suing individual defendants in their personal capacities." *Barber v. Sheppleman*, No. CIV.A. 10-3620, 2011 WL 4465840, at *2 (E.D. Pa. Sept. 26, 2011).  These factors "include 'the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity.'" *Casilla v. New Jersey State Prison*, No. CIV.A. 05-4590 (FLW), 2006 WL 2534416, at *7 n.3 (D.N.J. Aug. 31, 2006) (quoting *Moore v. City of Harriman,* 272 F.3d 769, 772 n. 1 (6th Cir. 2001)).  The question is "whether the pleadings offer the defendant adequate notice that his personal assets are at stake in the proceeding." *Smith v. Cent. Dauphin Sch. Dist.*, 419 F. Supp. 2d 639, 649 (M.D. Pa. 2005).

Here, there are several reasons why we conclude that Korman named the defendants in their individual capacities.  First, because official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent[,]" *Monell*, 436 U.S. at 690 n.55, if Korman's second amended complaint is construed as naming the defendants only in their official capacities, the defendants presumably would have moved to dismiss all claims based on the Eleventh Amendment, rather than addressing the claims on the merits as they have done here.  The fact that the defendants address Korman's claims on the merits rather than moving to dismiss them based on the Eleventh Amendment leads to an

inference that they have construed Korman's claims as being brought against them in their individual capacities.  Second, the defendants raise the defense of qualified immunity.  When defendants raise the defense of qualified immunity, this has been interpreted as a recognition by the defendants that they knew that they were sued in their individual capacities. *See Smith*, 419 F. Supp. 2d at 649 (concluding that the fact that the defendants raised qualified immunity indicated that they were aware of the plaintiff's intention to sue them in their individual capacities).  Third, even if there were doubt about whether Korman is suing the defendants in their individual capacities, a complaint is construed in the light favorable to the plaintiff, and doubts about whether a complaint names a defendant in his individual capacity are resolved in favor of the plaintiff. *See Halchak v. Dorrance Twp. Bd. of Supervisors*, 646 F. Supp. 3d 571, 588 n.18 (M.D. Pa. 2022) ("Despite the absence of a clear indication that Plaintiffs intended to sue them as individuals, the Court will construe the suit as seeking relief against these officers in their individual capacities as well."); *Dewald v. French*, No. 1:22-CV-00317, 2022 WL 17669716, at *8 (M.D. Pa. Dec. 14, 2022) ("[T]he Third Circuit requires a nonspecific complaint such as this to be liberally construed as if the claims were brought against Defendants in their individual capacities."); *Barber*, 2011 WL 4465840, at *3 (resolving doubts in favor of the plaintiff and concluding that "[b]ecause the factors point in both directions," the complaint is construed as suing the officers in

27

their individual capacities). This has long been the practice in the Third Circuit. *See West v. Keve*, 571 F.2d 158, 163 (3d Cir. 1978) ("If the complaint in this case is read narrowly and technically, it can be concluded that the defendants were being sued only in their official capacities. However, the complaint states facts constituting a damage claim against the defendants in their individual capacities. We must construe the complaint favorably to the plaintiff, and "as to do substantial justice." Accordingly, we hold that the complaint . . . states a claim for damages against the defendants in their individual capacities." (internal citations omitted)). Here, for the foregoing reasons and construing the second amended complaint liberally in the light favorable to Korman, we conclude that Korman is suing the defendants in their individual capacities.

### C. Federal Claims.

Korman brings her federal claims against the defendants in their individual capacities pursuant to 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory

right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a

deprivation of a federally protected right and that this deprivation was committed

by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396

F.3d 314, 319 (3d Cir. 2005).

We first address the federal claims against defendant Rickard in his

individual capacity, and we conclude that he is entitled to summary judgment

because he was not personally involved in the alleged violations of Korman's

rights.  We then address the federal claims against defendant Scochin in his

individual capacity, and we conclude that he is entitled to summary judgment as to

some—but not all—of Korman's federal claims.

### 1. Defendant Rickard.

Defendant Rickard argues that he is entitled to summary judgment because

there is no evidence that he was personally involved in violating Korman's rights.

We agree.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable,

a defendant must have been personally involved in the wrongful conduct.  Thus,

respondeat superior cannot form the basis of liability. *Jutrowski v. Twp. of*

*Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).  In other words, "each Government

official, his or her title notwithstanding, is only liable for his or her own

misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  And so, a constitutional

deprivation cannot be premised merely on the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008). Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

A plaintiff can make a sufficient showing of a defendant's personal involvement by showing, "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Id.* at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the [plaintiff] must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Here, it is undisputed that defendant Rickard was not defendant Scochin's direct supervisor, and the only involvement he had with the events was "reviewing and approving" the non-traffic citation/summons after it had already been issued. *Doc. 113* ¶¶ 8, 9. Such after-the-fact review of the citation/summons stemming from the Dollar General Incident is insufficient to show that defendant Rickard

31

was personally involved in violating Korman's constitutional rights regarding the same. And Korman has not presented evidence that defendant Rickard was personally involved in any of the other events that she claims violated her constitutional rights. Accordingly, we will grant defendant Rickard summary judgment as to all Korman's federal claims.

### 2. Defendant Scochin.

Defendant Scochin seeks summary judgment as to Korman's federal claims both on the merits and on the basis of qualified immunity. We address Korman's claims and defendant Scochin's arguments below.

### a. The First Amendment.

Korman brings a claim under the First Amendment based on the Dollar General Incident. The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

In connection with an earlier motion to dismiss the amended complaint, we noted that Trooper Scochin construed Korman's First Amendment claim as a claim of retaliatory prosecution, Korman did not dispute that characterization, and

because that was the most reasonable construction of the claim, we also construed

Korman's First Amendment claim as a claim of retaliatory prosecution. *Doc. 45* at

28.  Because Korman's allegations regarding the Dollar General Incident in her

second amended complaint are materially the same as her allegations in her

amended complaint and because it is the most reasonable construction of the claim,

we construe Korman's First Amendment claim as a claim of retaliatory prosecution

based on the Dollar General Incident.[10]

---

[10] We note that because the defendants answered the second amended complaint without filing a motion to dismiss the second amended complaint, we have not previously identified the claims set forth in the second amended complaint.  In a footnote in his brief, defendant Scochin asserts that "it appears that Plaintiff's claims would be better analyzed as either Malicious Prosecution or False Arrest under the Fourth Amendment rather than a First Amendment framework." *Doc. 114* at 14 n.3.  But he makes no cogent argument for why Korman's claim— titled as a First Amendment claim—should not be construed as a First Amendment claim.  Moreover, to the extent he is attempting to make an argument in this regard, we do not address this argument as it was raised only in a footnote. *See United States v. Yung*, 37 F.4th 70, 81 (3d Cir. 2022) (concluding that appellant forfeited argument that "he "tuck[ed] [] into a single footnote, without supporting authority or analysis"); *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"); *Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp. 2d 438, 457 n.14 (E.D. Pa. 2012) ("An argument made only in a footnote is not worthy of credence (other than to be rejected by footnote).").  Further, "[t]he plaintiff is 'the master of the complaint,' and . . . [s]he gets to determine which substantive claims to bring against which defendants." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (internal citation omitted).

Defendant Scochin contends that he is entitled to summary judgment as to Korman's First Amendment claim on the merits and on the basis of qualified immunity. We address the merits before turning to qualified immunity.

### i. The Merits.

"[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 90 (2018). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right[.]'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588, n. 10 (1998)). "A plaintiff claiming retaliation must [establish] '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising h[er] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 429 (3d Cir. 2020) (quoting *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017)).

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]" *Hartman,* 547 U.S. at 256. When a

retaliation claim is based on a criminal prosecution, a plaintiff must also plead and prove lack of probable cause. *Id.* at 265–66; *see also Mucy v. Nagy*, No. CV 20-1950, 2023 WL 1108390, at *10 (W.D. Pa. Jan. 30, 2023) (concluding that the requirement to plead and prove lack of probable cause applies in the "retaliatory citation" context and citing cases for that proposition).

Defendant Scochin's arguments regarding the First Amendment claim are muddled. After pointing out that Korman is not bringing a facial attack on the harassment statute (an assertion with which we agree), his argument as to the merits of the First Amendment claims reads:

> Defendant Scochin charged Plaintiff on information received, indicating that she coughed in someone's face during a dispute relating to the ongoing pandemic in October of 2020. SMF ¶¶ 1, 2. Plaintiff called into the barracks and made incriminating statements that could even be interpreted as a confession. SMF ¶¶ 3, 4. Plaintiff's explanation does not charge [sic] the fact that this charge was warranted under the circumstances, even though she was not convicted. Summary judgment should be granted on this claim.

*Doc. 114* at 14 (footnote omitted). However inartfully worded, defendant Scochin's argument is reasonably construed to be that he is entitled to summary judgment because there was probable cause for him to issue the citations/summons.

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on

the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

"Probable cause . . . exists when the facts and circumstances within the . . .

officer's knowledge are sufficient in themselves to warrant a reasonable person to

believe that an offense has been or is being committed by the person . . . ." *Orsatti*

*v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  In other words,

"'[p]robable cause exists if there is a fair probability that the person committed the

crime at issue.'" *Williams v. City of York,* 967 F.3d 252, 263 (3d Cir. 2020)

(quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016)).

        "In determining probable cause, . . . officers must consider plainly

exculpatory evidence in addition to inculpatory evidence." *Harvard v. Cesnalis*,

973 F.3d 190, 200 (3d Cir. 2020).  "This is true 'even if substantial inculpatory

evidence (standing by itself) suggests that probable cause exists.'" *Id*. (quoting

*Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000)).  Nevertheless, "some

'unreliability or exculpatory evidence' will not 'fatally undermine[ ]' probable

cause otherwise established." *Dempsey*, 834 F.3d at 478 (footnote omitted)

(quoting *Wilson*, 212 F.3d at 790).  Thus, while "a positive identification by a

victim witness, without more, would usually be sufficient to establish probable

cause," "[i]ndependent exculpatory evidence or substantial evidence of the

witness's own unreliability that is known by the . . .  officer[s] could outweigh the

identification such that probable cause would not exist." *Wilson*, 212 F.3d at 790.

"Each case must therefore be examined on its facts." *Id*.

In determining if there was probable cause, "we examine only the information available to the officer at the [relevant] time." *Dempsey*, 834 F.3d at 480. "After-acquired evidence, however significant for trial, does not inform" our determination of what the officer knew at the time. *Id*. Thus, the "focus[] is on the information the officer[] had available to [him], not on whether the information resulted from exemplary police work." *Orsatti*, 71 F.3d at 484. And an officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000). Further, the probable cause "standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005).

"Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It is a "significantly lower" standard than the standard required for a conviction, and "[i]t is therefore irrelevant in a probable cause inquiry whether a person is later acquitted of the crime for which she or he was arrested." *Halsey v. Pfeiffer*, 750 F.3d 273, 299 (3d Cir. 2014) (internal quotations and citations omitted).

37

Moreover, the "probable cause inquiry is entirely objective." *Id*. (footnote omitted). Thus, "an . . . officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

"[T]he Court has eschewed 'any rigid demand that specific "tests" be satisfied' and has instead prescribed a 'totality-of-the-circumstances approach' to the probable cause determination." *Dempsey*, 834 F.3d at 467–68 (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). Because the probable cause "determination is necessarily fact-intensive, . . . it will usually be appropriate for a jury to determine whether probable cause existed." *Id.* at 468. Nevertheless, the court may determine as a matter of law that there was probable cause if the facts, viewed in the light most favorable to the plaintiff, "reasonably would not support a contrary factual finding.'" *Id*. (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Here, defendant Scochin suggests that there was probable cause for charging Korman with harassment in violation or 18 Pa. C.S.A. § 2709(a)(1). But he does not set forth what information he possessed that purportedly amounted to probable cause. Rather, he merely asserts that he issued the citation based "on information received," *doc. 114* at 14. And he has not set forth—either in his statement of material facts or in his brief—what information he received before issuing the

citation.  It is undisputed that both the victim and Korman called the police barracks, and defendant Scochin presented recordings of those initial calls as evidence in support of his statement of material facts.  But those calls were with the dispatch operator, not defendant Scochin.  And defendant Scochin does not assert that the dispatch operator told him what was said on those calls.  Moreover, although it appears that both the victim and Korman spoke to defendant Scochin after speaking with the dispatch operator, defendant Scochin has not set forth what was said on those calls.  Because he has not specified what information he received, we cannot conclude based on the current record that defendant Scochin had probable cause to issue the citation/summons.  Thus, he is not entitled to summary judgment as to Korman's First Amendment claim on the basis that there was probable cause.  And he has not moved for summary judgment as to any of the other elements of her First Amendment claim.

### ii.  Qualified Immunity.

Defendant Scochin contends that he is entitled to qualified immunity as to Korman's federal claims.  The only assertion that defendant Scochin makes regarding qualified immunity that can reasonably be construed as applying to the First Amendment claim is that "issuing a citation on information received is not a clear violation of Plaintiff's rights." *Doc. 114* at 31.

Despite their participation in constitutionally impermissible conduct,
government officials "may nevertheless be shielded from liability for civil
damages if their actions did not violate 'clearly established statutory or
constitutional rights of which a reasonable person would have known.'" *Hope v.
Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818
(1982)).  Qualified immunity ensures that before officers are subjected to suit, they
have notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two
important interests—the need to hold public officials accountable when they
exercise power irresponsibly and the need to shield officials from harassment,
distraction, and liability when they perform their duties reasonably." *Pearson v.
Callahan,* 555 U.S. 223, 231 (2009).  "If the law was clearly established, the
immunity defense ordinarily should fail, since a reasonably competent public
official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232.
One prong of the analysis is whether the facts that the plaintiff has alleged or
shown make out a violation of a constitutional right. *Id.*  The other prong of the
analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194,
201 (2001).

"To determine whether a right was 'clearly established,' we conduct a two-
part inquiry." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021).  "First,

we must 'define the right allegedly violated at the appropriate level of specificity.'"
*Id*. (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)).  "This requires
us to frame the right 'in light of the specific context of the case, not as a broad
general proposition.'" *Id*. (quoting *Saucier*, 533 U.S. at 201).  "Second, we must
ask whether that right was 'clearly established' at the time of its alleged violation,
*i.e.*, whether the right was 'sufficiently clear that a reasonable official would
understand that what he is doing violates that right.'" *Id*. (quoting *Saucier*, 533
U.S. at 202).  "This is an 'objective (albeit fact-specific) question,' where '[an
officer]'s subjective beliefs . . . are irrelevant.'" *Id*. (quoting *Anderson v.
Creighton*, 483 U.S. 635, 641 (1987)).

"To be clearly established, a legal principle must have a sufficiently clear
foundation in then-existing precedent." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).  In
other words, "[t]he rule must be 'settled law,' which means it is dictated by
'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'"
*Id*. (internal citations omitted).  "It is not enough that the rule is suggested by then-
existing precedent." *Id*.  Rather, "[t]he precedent must be clear enough that every
reasonable official would interpret it to establish the particular rule the plaintiff
seeks to apply." *Id*.

If the law did not put the defendant on notice that his conduct would be
clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County*

*Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

"Defendants bear the burden of establishing qualified immunity." *White v. Dauphin Cnty.*, No. 1:22-CV-1241, 2024 WL 3046718, at *4 (M.D. Pa. June 18, 2024); *see also Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024) ("The officers bear the burden of persuasion under each prong" of the qualified immunity analysis). "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019).

Defendant Scochin's threadbare statement that "issuing a citation on information received is not a clear violation of Plaintiff's rights[,]" *doc. 114* at 31, is not sufficient to meet his burden of showing that he is entitled to qualified immunity. As discussed above, defendant Scochin has failed to set forth what

information he received.  And he does not address the law regarding Korman's

First Amendment claim in his qualified-immunity argument.  Thus, we reject his

"argument as conclusory and undeveloped." *Yentzer v. Potter Cnty.*, No. 3:20-CV-

1579, 2022 WL 903937, at *5 (M.D. Pa. Mar. 28, 2022) (noting that the

"[d]efendants superficially aver they are 'unaware of' precedent clearly

establishing the rights at issue, thereby passing off the necessary research and

analytical work," but observing that "[i]t is defendants' burden, not [the plaintiff's]

or the court's, to establish that qualified immunity applies" (citation to the record

omitted)).  Thus, defendant Scochin has not shown that he is entitled to qualified

immunity as to Korman's First Amendment claim.


### b.  The Fourth Amendment.

Korman claims that the defendants violated the Fourth Amendment.  The

Fourth Amendment, which applies to the States through the Fourteenth

Amendment, *Bailey v. United States*, 568 U.S. 186, 192 (2013), provides:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons
> or things to be seized.

U.S. Const. amend. IV.

43

The exact nature of Korman's Fourth Amendment claims is unclear. In Count 2 of her second amended complaint, which is titled "Violation of the Fourth Amendment," Korman asserts that "Scochin had a legal duty to tell [her] on October 3, 2020, that [her] registration was expired and order [her] to renew it." *Doc. 50* ¶ 52. She also complains about a later traffic stop when defendant Scochin cited her for driving with an expired registration. *Id*. Liberally construing the second amended complaint, we construe Korman to be bringing a Fourth Amendment claim based on defendant Scochin's failure to tell her that her registration was expired and a Fourth Amendment claim based on the later traffic stop. Although Korman does not specifically mention malicious prosecution, defendant Scochin addresses her claims as Fourth Amendment malicious prosecution claims. We will do so as well. We address each of Korman's Fourth Amendment claims in turn.

### i. Failure to Tell Korman her Registration Was Expired.

It is unclear how the Fourth Amendment is implicated by defendant Scochin's alleged failure to tell Korman on October 3, 2020, over the phone that her registration was expired. Moreover, as defendant Scochin argues, "there is no consensus of case law requiring [an officer] to interrupt another investigation to inform [a caller] that her car registration was out of date." *Doc. 114* at 30–31.

Thus, because it was not clearly established that such violates the Fourth Amendment, we will grant defendant Scochin summary judgment as to this Fourth Amendment claim.

## ii. The Traffic Stop.

In connection with the Fourth Amendment Count in the second amended complaint, Korman also asserts that defendant Scochin later conducted a traffic stop. *Doc. 50* ¶ 52. And although her second amended complaint is not clear in this regard, it appears that she is asserting a Fourth Amendment claim based on the traffic stop. *Id.*[11] Defendant Scochin did not, however, construe the second amended complaint as raising a Fourth Amendment claim based on the traffic stop. Given the confusing nature of Korman's allegations, that may be understandable.

---

[11] Although Korman makes a passing reference to probable cause, to the extent that she is challenging the traffic stop, reasonable suspicion, not probable cause, is the applicable standard. "Traffic stops—however brief—are seizures, so the Fourth Amendment requires they be reasonable under the circumstances." *United States v. Ross*, 151 F.4th 487, 494 (3d Cir. 2025) (internal quotation marks and citation omitted). "[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). Thus, "[t]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops, not probable cause." *United States v. Holloway*, No. 3:24-CR-238, 2025 WL 2977120, at *10 (M.D. Pa. Oct. 21, 2025). "[T]he 'reasonable suspicion' analysis is objective; subjective motive or intent is not relevant" to that analysis. *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006).

And recognizing the confusing nature of Korman's allegations, defendant Scochin asks that if the court construes the claims differently from how he has, he be given leave to submit supplemental briefs. *See doc. 114* at 4, 31, n.7.  But because defendant Scochin's statement of material facts does not address the traffic stop, we need more than supplemental briefing to address the claim based on the traffic stop.  Thus, considering the confusing nature of Korman's second amended complaint, we will give defendant Scochin leave to file another motion for summary judgment as to the Fourth Amendment claim based on the traffic stop. And since we are giving defendant Scochin leave to file another motion for summary judgment, in the interest of judicial economy, we will also give him leave to file another motion for summary judgment as to any other claims that survive the current motion for summary judgment.

### iii.  Malicious Prosecution.

Although Korman does not specifically mention malicious prosecution, defendant Scochin construes Korman's second amended complaint as asserting Fourth Amendment malicious prosecution claims.  Korman's brief in opposition does not shed light on whether she asserts malicious prosecution claims. Nevertheless, given Korman's factual allegations regarding the citations and court proceedings stemming from the Dollar General Incident and Expired Registration

Incident, we do not fault defendant Scochin for liberally construing the second amended complaint as asserting malicious prosecution claims.[12]  Addressing such claims, we conclude that defendant Scochin is entitled to summary judgment as to such claims.

To proceed on a malicious prosecution claim, a plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [her] favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) [she] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

Defendant Scochin contends that he is entitled to summary judgment as to any malicious prosecution claim because Korman has not shown that she suffered a seizure.[13]  We agree.

---

[12] Defendant Scochin also construes Korman's second amended complaint as raising false arrest claims.  But Korman does not allege in the second amended complaint that she was arrested.  Thus, we do not construe Korman as raising false arrest claims.

[13] As to the Dollar General Incident, defendant Scochin also contends that there was probable cause.  Again, as discussed above, he contends that he issued the citation based "on information received." *Doc. 114* at 17.  But again, as discussed above, he has failed to articulate what information he received.

"Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005).  The United States Court of Appeals for the Third Circuit concluded that there was a seizure under the Fourth Amendment where the plaintiff "had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania." *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998).  The Third Circuit also found a seizure where the plaintiff "flew from her home in California to Pennsylvania for her arraignment because an arrest warrant had been issued and she had been directed to return"; "she spent more than an hour being fingerprinted and photographed at a police station" during which time "she was clearly not free to leave"; she "was required to post unsecured bail of $50,000" and "was told that the bond would be forfeited if she did not attend all court proceedings—compelling her to travel across the United States to attend pre-trial hearings" a dozen times. *Black v. Montgomery Cnty.*, 835 F.3d 358, 367–68 (3d Cir. 2016).  But the Third Circuit found no seizure for purposes of a Fourth Amendment malicious prosecution claim where the plaintiffs were only issued a

---

Accordingly, we will not grant summary judgment as to the malicious prosecution claim stemming from the Dollar General Incident on that basis.

summons and required to attend trial, but they were never arrested, never posted

bail, were free to travel, and did not have to report to Pretrial Services. *DiBella*,

407 F.3d at 603; *see also Laws v. Borough of Lansdale*, No. 24-1562, 2025 WL

1218186, at *3 (3d Cir. Apr. 28, 2025) ("Pursuant to a criminal summons, Laws

was required to have her fingerprints and photo taken and appear at her preliminary

hearing, but these actions do not rise to the level of an unreasonable seizure by the

government under the Fourth Amendment."); *Krajkovich v. Borough*, No. 3:22-

CV-1912, 2023 WL 6849047, at *5 (M.D. Pa. Oct. 17, 2023) ("Compulsory

attendance at a hearing or trial without more does not rise to the level of an

onerous restriction on one's liberty" sufficient to constitute a seizure under the

Fourth Amendment); *McCormack v. Livergood*, 353 F. Supp. 3d 357, 368 (M.D.

Pa. 2018) (concluding that "the requirement obliging McCormack to appear at all

court proceedings does not amount to a deprivation").

Here, Korman has not responded to defendant Scochin's argument that she

was not seized under the Fourth Amendment.  And she has not presented evidence

from which a reasonable trier of fact could conclude that in connection with either

the citation stemming from the Dollar General Incident or the citation stemming

from the Expired Registration Incident that she was taken into custody or subject to

pretrial, non-custodial restrictions sufficient to constitute a Fourth Amendment

seizure.  Accordingly, we will grant summary judgment to defendant Scochin as to

any Fourth Amendment malicious prosecution claims.[14]

### c.  The Fourteenth Amendment.

Korman claims that the defendants violated her Fourteenth Amendment right

to due process.  The Fourteenth Amendment provides that a state shall not "deprive

any person of life, liberty, or property, without due process of law." U.S. CONST.

amend XIV, §1.  "The core concept of due process is protection against arbitrary

government action," and due process has "both substantive and procedural

components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).

### i.  Substantive Due Process.

Defendant Scochin contends that Korman's due process claims are barred by

the more-specific-provision rule.  To the extent that Korman's due process claims

are construed as substantive due process claims, we agree.

---

[14] As to a Fourth Amendment malicious prosecution claim based the Expired
Registration Incident, defendant Scochin also contends that he is entitled to
summary judgment because Korman was in fact guilty, and the proceedings did not
end in her favor.  Korman has not responded to that argument.  And because she
has not shown that the proceedings ended in her favor, that is another reason why
defendant Scochin is entitled to summary judgment as to that claim.

The substantive component of the Fourteenth Amendment Due Process Clause limits what the government may do regardless of the fairness of the procedures that it employs. *Nekrilov v. City of Jersey City*, 45 F.4th 662, 680 (3d Cir. 2022). "The Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). "Under the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

Here, as discussed above, Korman presents her claims as First Amendment and Fourth Amendment claims. To the extent Korman is attempting to bring substantive due process claims, those claims are barred by the more-specific-provision rule. *See Jones v. Wetzel*, No. CV 22-1190, 2025 WL 2785043, at *7 (E.D. Pa. Sept. 30, 2025) (concluding that because the plaintiff's claims fit within the Eighth and First Amendments "the more-specific-provision rule forecloses any substantive due process claim"); *Shade v. Stanish*, No. 1:18-CV-1429, 2020 WL 869748, at *5 (M.D. Pa. Feb. 21, 2020) (concluding that because the plaintiff's

51

claims fit within the Eighth and Fourth Amendments "the more-specific-provision rule forecloses any substantive due process claims").

### ii. Procedural Due Process.

Although defendant Scochin is entitled to summary judgment as to any substantive due process claims based on the more-specific-provision rule, as noted earlier, due process has "both substantive and procedural components." *Evans*, 645 F.3d at 658.  Defendant Scochin does not address Korman's due process claims as procedural due process claims.  But construing the second amended complaint liberally, as we must since Korman is proceeding pro se, and given that she complains about defendant Scochin lying to the court, we construe the second amended complaint as raising procedural due process claim of fabrication of evidence[15] relating to the Dollar General Incident.  And because Korman

---

[15] "Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for "corruption of the truth-seeking function of the trial process." *Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014) ("We emphatically reject the notion that due process of law permits the police to frame suspects.").  And "[t]here is no meaningful reason why due process protections precluding fabricated evidence should turn on whether or not one is convicted at trial." *Black*, 835 F.3d at 370.  "Accordingly, . . . an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Id.* at 371.  But the Third Circuit has "cautioned . . . that there

complains that defendant Scochin's statements regarding her actions in relation to the Dollar General Incident damaged her reputation, we construe the second amended complaint as asserting a due process claim in that regard relating to defendant Scochin's public information release report relating to the Dollar General Incident.[16] We make no determination whether the second amended

---

are 'hurdles facing a plaintiff alleging a due process violation for fabrication of evidence.'" *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 372). "A plaintiff must demonstrate a 'meaningful connection' between the injury and the use of the fabricated evidence." *Id.* (quoting *Black*, 835 F.3d at 372). "There is also a requirement that the evidence be 'so significant that it could have affected the outcome of the criminal case.'" *Id.* (quoting *Black*, 835 F.3d at 372). Further, "the standard required to demonstrate that evidence is fabricated is a 'notable bar.'" *Id. (*quoting *Black*, 835 F.3d at 372). "[T]testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). Thus, "a witness's misidentification should not be regarded as a fabrication in the absence of persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith." *Id.*

[16] An interest in one's reputation is not by itself an interest protected by the Due Process Clause. *Paul v. Davis,* 424 U.S. 693, 712 (1976). But "[r]eputational harm can constitute a protected interest when coupled with an additional deprivation of a protected right or interest." *Baraka v. McGreevey*, 481 F.3d 187, 208 (3d Cir. 2007) (footnote omitted). "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to [her] reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d. Cir. 2006) (italics in original). This is known as the "stigma-plus" test. *Dee v. Borough of Dunmore,* 549 F.3d 225, 234 (3d Cir. 2008). "Satisfying the stigma component requires the plaintiff [to show] the purportedly stigmatizing statement was (1) published, (2) substantially and materially false, and (3) infringed upon the 'reputation, honor, or integrity' of the [plaintiff]." *Taylor v. Derry Twp. Sch. Dist.*, No. 1:20-CV-1363, 2022 WL 80479,

complaint states claims upon which relief can be granted or whether Korman will

be able to present facts sufficient to survive a properly supported summary

judgment motion as to these claims.  Rather, we merely note these claims, and

because defendant Scochin has not addressed these claims,[17] they remain.  As

---

at *5 (M.D. Pa. Jan. 7, 2022).  "[A] *sine qua non* of a 'stigma-plus' suit is that the 'plus' must be the result of state action directly affecting the plaintiff's rights or status under the law." *Mathews v. Abington Heights Sch. Dist.*, No. 3:22-CV-00959, 2024 WL 711610, at *8 (M.D. Pa. Feb. 21, 2024) (internal quotation marks and citation omitted).  "The fact that state action may be involved in the 'stigma' (*i.e.*, defamation) is not of itself sufficient to maintain the action." *Id.* (internal quotation marks and citation omitted).  In other words, "[a] defamation suit under 42 U.S.C. § 1983 may proceed 'only if [the defamatory act] occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution.'" *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 183–84 (3d Cir. 2020) (quoting *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir. 1989)).  Mere "emotional distress or psychological harm is simply too ethereal to satisfy the 'plus' element of the 'stigma-plus' test." *Mathews*, 2024 WL 711610, at *9 (internal quotation marks regarding quotations from case citation and case citation omitted); *see also Good v. City of Sunbury*, 352 F. App'x 688, 692 (3d Cir. 2009) (concluding that the plaintiff's "alleged psychological injury is not sufficient to satisfy the 'plus' element of the 'stigma-plus' test," reasoning that if "emotional trauma resulting from government defamation was, without more, sufficient to constitute the 'plus' factor necessary in a Fourteenth Amendment due process liberty claim, virtually every defamation plaintiff would have a constitutional claim ready-made to survive at least to summary judgment, because defamatory remarks or acts, by their very nature, often cause severe distress to their target[,]" and "[t]he end result would be the effective elimination of the 'plus' requirement of the 'stigma-plus' test").

[17] In the section of his brief on qualified immunity, defendant Scochin mentions the public information release report and asserts that such reports are standard procedure. *See doc. 114* at 30.  But he does frame Korman's claim as a stigma-plus claim, and he fails to meaningfully develop an argument for why he is entitled to summary judgment as to such a claim.

mentioned above, we will give defendant Scochin leave to file another motion for summary judgment.

### D. State-Law Claims.

Korman presents four types of state-law claims: (1) claims for negligence; (2) claims for intentional infliction of emotional distress; (3) claims for negligent training, supervision, and retention; and (4) claims for vicarious liability/respondeat superior. The defendants move for summary judgment as to Korman's state-law claims both on the merits and on the basis of sovereign immunity. We first conclude that the defendants are entitled to summary judgment on the merits of Korman's claims for negligent training, supervision, and retention; her claims for vicarious liability/respondeat superior; and her claims of intentional infliction of emotional distress. Then, we conclude that the defendants are entitled to sovereign immunity as the remaining negligence claims.

### 1. The Negligent Training, Supervision, and Retention Claim.

In Count Six of her second amended complaint, Korman presents claims for negligent training, supervision, and retention. *Doc. 50* ¶ 56. In this count, it appears that Korman seeks to hold defendant Rickard liable for failing to train or supervise defendant Scochin. *Id.* But as the undisputed material facts show,

defendant Rickard was not defendant Scochin's direct supervisor. *See doc. 113* ¶ 8. And there is no evidence in the record that defendant Rickard was responsible for training or supervising Scochin. Thus, the defendants are entitled to summary judgment as to these claims.

### 2. The Vicarious Liability/Respondeat Superior Claims.

In Count Seven of her second amended complaint, Korman presents claims for vicarious liability/respondeat superior. *Doc. 50* ¶ 57. In this count, Korman asserts: "Scochin and his supervisor are located in the Honesdale Barracks. Since 2009, humans at this Barracks have been directly handling me and my problems. Robert Evanchik is responsible for these men and women since he was sworn in as commissioner of the Pennsylvania State Police." *Id.* Korman is seeking to hold Robert Evanchik responsible for the defendants' actions, but Robert Evanchik is not a defendant in this action. And Korman has not presented sufficient evidence to hold the named defendants liable based on vicarious liability/respondeat superior. Thus, the defendants are entitled to summary judgment as to these claims.

### 3. The Intentional Infliction of Emotional Distress Claims.

In Count Five of her second amended complaint, Korman presents claims for intentional infliction of emotional distress. *Doc. 50* ¶ 55. In this count, it

56

appears that Korman seeks to hold the defendants liable for the emotional distress caused by the issuance and prosecution of the citation/summons related to both the Dollar General Incident, the Expired Registration Incident, the traffic stop, the purported false statements about her, and defendant Scochin's early morning phone calls to her. *Id*.

"A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: '(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *Brown v. Monsalud*, No. 24-1555, 2025 WL 2803768, at *3 (3d Cir. Oct. 2, 2025) (quoting *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982)). Further, "the existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *see also Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) ("We construe *Kazatsky* as limiting the scope of liability by requiring competent medical evidence of causation and severity.").

Here, the defendants contend that they are entitled to summary judgment as to Korman's intentional infliction of emotional distress claims because she presents no medical evidence of emotional distress. Korman has not responded to that argument, and she has not pointed to any medical evidence to support her

assertion that the complained of conduct caused her severe emotional distress. Thus, the defendants are entitled to summary judgment as to her intentional infliction of emotional distress claims. *See Romero v. Tobyhanna Twp.*, No. 3:19-CV-01038, 2021 WL 4149189, at *14 (M.D. Pa. Sept. 13, 2021) (granting summary judgment to defendants on plaintiff's claim of intentional infliction of emotional distress because, among other reasons, the plaintiff "failed to adduce any objective evidence at all that he suffered severe emotional distress as a result of the criminal proceedings" brought against him), *aff'd*, No. 21-2886, 2023 WL 2728829, at *3 (3d Cir. Mar. 31, 2023); *Stains v. Franklin Cnty.*, No. 1:18-CV-2226, 2021 WL 4047457, at *11 (M.D. Pa. Aug. 16, 2021) (recommending summary judgment in favor of the defendant as to claim of intentional infliction of emotional distress because the plaintiff did not present "competent medical evidence to support his claim of severe emotional distress" (internal quotation marks and citation omitted)), *report and recommendation adopted sub nom Stains v. Frantz*, No. 1:18-CV-02226, 2021 WL 4037592, at *1 (M.D. Pa. Sept. 3, 2021); *Dobson v. Milton Hershey Sch.*, No. 1:16-CV-1958, 2020 WL 2199001, at *7 (M.D. Pa. May 6, 2020) ("Absent some 'expert medical confirmation that the plaintiff actually suffered the claimed distress,' Dobson's claim is insufficient as a matter of Pennsylvania law to survive summary judgment."); *Landau v. Lamas*, No. 3:15-CV-1327, 2019 WL 3521421, at *18 (M.D. Pa. Aug. 1, 2019) (granting

summary judgment as to intentional infliction of emotional distress claims because the plaintiff "failed to point to competent medical evidence in the factual record that he has experienced severe emotional distress").[18]

### 4. The Negligence Claims.

In Count Four of her second amended complaint, Korman presents negligence claims. *Doc. 50* ¶ 54. Given Korman's loose pleading style and her inclusion of allegations regarding individuals and events not directly relevant to the claims in this case, it is difficult to isolate the exact nature of her claims. Nevertheless, it appears that the crux of her claims is the purported libel by defendant Scochin as a result of the public information release report as well as the issuance and prosecution of the two citations at issue in this case. The defendants contend that these state-law claims are barred by sovereign immunity.[19]

---

[18] The defendants also argue that their conduct was not extreme and outrageous such as to support a claim of intentional infliction of emotional distress. *Doc. 114* at 22. Because the defendants are entitled to summary judgment given that Korman has not presented competent medical evidence of her emotional distress, we need not reach that issue.

[19] The defendants also purport to address the negligence claims on the merits. *See doc. 114* at 20. But their argument is confusing and undeveloped. *Id.* Thus, we do not address the merits of the negligence claims. Further, because we conclude that the defendants are entitled to sovereign immunity, we do not need to address the merits.

Sovereign immunity bars claims against the Commonwealth, its agencies, and its employees acting within the scope of their duties. *See* 1 Pa. Cons. Stat. Ann. § 2310.  But Pennsylvania law waives sovereign immunity in ten limited circumstances.  These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. Cons. Stat. Ann. § 8522(b).  The exceptions to the Commonwealth's sovereign immunity must be strictly construed because the legislature waived immunity only in specific situations. *Moser v. Heistand,* 681 A.2d 1322, 1326 (Pa. 1996).

We agree with the defendants that Korman's state-law claims are not included among § 8522's exceptions to sovereign immunity, and Korman does not argue otherwise.  Thus, if the defendants were acting within the scope of their employment, they are entitled to sovereign immunity.  Korman suggests, however, that the defendants were not acting within the scope of their employment.

"Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct 'within the scope of employment.'" *Brumfield v. Sanders*,

60

232 F.3d 376, 380 (3d Cir. 2000). "According to the Restatement, 'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . ." *Id*. (quoting Restatement (Second) Agency § 228). "Additionally, 'if force is intentionally used by the employee against another,' courts must consider[] whether 'it is not *unexpected* by the employer.'" *DeGroat v. Cavallaro*, No. 3:16-CV-1186, 2017 WL 2152376, at *4 (M.D. Pa. May 17, 2017) (emphasis in original) (quoting *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988)). "On the other hand, an employee's conduct 'is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Justice v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019) (quoting Restatement (Second) Agency § 228(2)).

For conduct "'to be within the scope of employment, [the]conduct must be of the same general nature as that authorized, or incidental to that authorized." *Id*. (quoting Restatement (Second) Agency § 229(1)). In making that determination, numerous facts should be considered. *Id*. (observing that Restatement (Second) Agency § 229(2) lists ten facts to be considered). Further, "'an act, although forbidden, or done in a forbidden manner, may be within the scope of

employment[,]'" as may an action that is "consciously criminal or tortious." *Id.*
(quoting Restatement (Second) Agency §§ 230, 231). But "'an act of a servant is
not within the scope of employment if it is done with no intention to perform it as a
part of or incident to a service on account of which he is employed.'" *Id. (*quoting
Restatement (Second) Agency § 235). And "[i]ntentional torts that are
'unprovoked, unnecessary or unjustified by security concerns or penological goals'
do not, as a matter of law, fall within the scope of employment." *Minyard v. City of
Philadelphia*, No. CIV.A. 11-246, 2012 WL 3090973, at *6 (E.D. Pa. July 31,
2012) (quoting *Wesley v. Hollis*, 2007 WL 1655483, at *15 (E.D. Pa. June 6,
2007)). Additionally, "[s]ince an employee is generally authorized to use only
'reasonable' measures to achieve a result desired by his or her employer, an
'outrageous' act may lie beyond the scope of his or her employment even where it
constitutes 'a means of accomplishing an authorized result.'" *Zion v. Nassan*, 283
F.R.D. 247, 267 (W.D. Pa. 2012) (quoting *Lunn v. Yellow Cab Co.*, 403 Pa. 231
(1961)), *aff'd*, 556 F. App'x 103 (3d Cir. 2014)). In other words, "[a] high degree
of 'outrageousness' can take an employee's actions 'outside the scope' of his or
her employment." *Id.* (quoting *Haas v. Barto*, 829 F. Supp. 729, 734 (M.D. Pa.
1993)).

 The inquiry about whether conduct was within the scope of the actor's
employment is "fact-intensive." *Justice*, 208 A.3d at 1060. And "whether a

particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury." *Id*. at 1068. Only "where neither the facts nor the inferences to be drawn from them are in dispute[,]" may the court "decide the scope of employment question as a matter of law." *Id*. "Moreover, because sovereign immunity is an affirmative defense, the defendant carries the burden at trial of proving that his conduct was within the scope of his employment." *Id*. (internal citation omitted).

Here, although how Korman has pleaded her claims is confusing, liberally construing the second amended complaint, the conduct underlying her claims is as follows: defendant Scochin issuing the citation/summons following the Dollar General Incident; defendant Rickard approving that citation/summons after the fact; defendant Scochin issuing the public information release report following the Dollar General Incident; defendant Scochin prosecuting the citation/summons, including appearing in court; defendant Scochin issuing Korman a citation for an expired registration; and defendant Scochin prosecuting that citation, including appearing in court. As set forth above, the facts are not in dispute given that Korman has not responded to the defendants' statement of material facts. And based on the undisputed facts, a reasonable trier of fact could not conclude that the defendants acted outside of the scope of their employment with regard to the conduct at issue.

Generally, "[w]here a state trooper is on duty and investigating a crime throughout the duration of the alleged offenses, she is acting within the scope of her employment and sovereign immunity will require the dismissal of state law claims against her." *Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 487 (W.D. Pa. 2019), *aff'd*, 844 F. App'x 511, 513 (3d Cir. 2021); *see also Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 683 (M.D. Pa. 2010) (concluding that the actions taken by the defendant state troopers, which occurred when they "were on duty, in uniform, and investigating a crime throughout the duration of the alleged offenses" were within the scope of their employment). But given the fact-intensive nature of the analysis of whether conduct was within the scope of the actor's employment, summary judgment is not warranted in every circumstance for Pennsylvania State Police troopers and officers. *See Lockhoff v. Slonaker*, No. CV 16-2893, 2017 WL 2423790, at *16 (E.D. Pa. June 5, 2017) (denying summary judgment to state trooper as to state-law malicious prosecution claim because based on the plaintiff's version of events, the trooper submitted false information and "knowingly submitting false allegations to a prosecutor would not serve the interests of the Pennsylvania State Police or be otherwise justified by a legitimate penological purpose, [and] such activity falls outside a Trooper's scope of employment).

Here, the defendants issued, approved, investigated, and prosecuted the citations flowing from the Dollar General Incident and the Expired Registration

Incident.  That conduct is the type of conduct that is expected of police officers, such as state troopers. *See Farmer v. Decker*, 353 F. Supp. 3d 342, 351 (M.D. Pa. 2018) (observing that "the undisputed facts demonstrate that Defendant's investigation of the incident and issuance of the Citation/Summons is the type of action that Defendant is employed to perform as a Pennsylvania State Trooper"); *Brown v. Perugino*, No. 1:22-CV-01400, 2023 WL 4306761, at *5 (M.D. Pa. June 30, 2023) ("Without question, a police officer's acts of investigating criminal conduct, filing criminal charges, and arresting individuals suspected to have committed crimes are within the scope of his employment."), *aff'd*, No. 23-2303, 2024 WL 3935204, at *2 (3d Cir. Aug. 26, 2024); *Mucy v. Nagy*, No. CV 20-1950, 2023 WL 1108390, at *15 (W.D. Pa. Jan. 30, 2023) (characterizing the issuance of traffic citations as "a quintessential function of the state police").  And there is no evidence that the conduct did not occur substantially within the authorized time and space limits applicable to such.[20]

Nor is there evidence that the conduct was not actuated, at least in part, by a purpose to serve the Pennsylvania State Police.  In this regard, we note that "a mere failure to have probable cause . . . does not prevent the application of

---

[20] We note that Korman does not include Scochin's early morning phone calls in her negligence count. *See doc. 50* ¶ 54.  Rather, she claims that those calls amounted to the intentional infliction of emotional distress, *see id*. ¶ 55, a claim that we addressed above.

sovereign immunity when the officer's actions otherwise fall within the scope of his employment." *Perkins v. Staskiewicz*, No. CIVA 1:CV-08-1651, 2009 WL 693176, at *4 (M.D. Pa. Mar. 13, 2009). But where an officer proceeds knowing that he lacks probable cause, such knowledge "takes conduct that would have been within the scope of his employment as a police officer—investigating complaints and making arrests—outside the scope of employment because it no longer serves the interests of the employer." *Id*. Here, as discussed above in connection with Korman's federal claims, defendant Scochin contends that he issued the citation/summons regarding the Dollar General Incident based on information received, i.e., a phone call from the victim and phone call from Korman, but he does not set forth what information was received. And although Korman suggests that she had a reputation in Wayne County and the defendants knew of her, she has not presented evidence from which a reasonable trier of fact could conclude that the defendants had a motive or personal animus such that their conduct in issuing, approving, investigating, and prosecuting the citations was done knowingly without probable cause such that it was not actuated, at least in part, by a purpose to serve the Pennsylvania State Police. Thus, there is no evidence that suggests that the defendants were acting outside the scope of their employment in this regard. *See generally Est. of Himmelwright v. Campana*, No. 4:21-CV-01731, 2023 WL 7647294, at *5 (M.D. Pa. Nov. 14, 2023) (stating that "[e]ven though

there are now issues as to the validity of the warrant, that alone does not mean [State Police Corporal] acted outside the scope of his employment[,]" and concluding that given that "[n]othing indicates that he purposefully or knowingly executed the warrant without probable cause[,]" the "Defendant is entitled to judgment as a matter of law because he acted within the scope of his employment, and sovereign immunity therefore bars this state law claim"); *Spiker v. Allegheny Cnty. Bd. of Prob. & Parole*, 920 F. Supp. 2d 580, 612 (W.D. Pa. 2013) (explaining that whether there is probable cause under the Fourth Amendment is analyzed under an objective standard, but whether an officer was not acting within the scope of her employment because she knew that she did not have probable cause is analyzed under a subjective standard, and concluding that the officer was entitled to sovereign immunity because although there were plausible allegations that the officer lacked probable cause, there were not plausible allegations that the officer knew that she lacked probable cause), *aff'd sub nom. Spiker v. Whittaker*, 553 F. App'x 275, 276 (3d Cir. 2014). Accordingly, the defendants are entitled to sovereign immunity from Korman's state-law claims based on that conduct.

As to defendant Scochin issuing a public information release report, he has presented evidence that that is standard procedure. *See doc. 113* ¶ 10. And Korman has not rebutted that evidence. Thus, a reasonable trier of fact could not conclude that Scochin was acting beyond the scope of his employment in this

regard.  Accordingly, the defendants are entitled to sovereign immunity from Korman's state-law claims based on that conduct.

## VI.  Conclusion.

For the foregoing reasons, we will grant in part and deny in part the defendants' motion for summary judgment.  More specifically, we will dismiss the claims against the defendants in their official capacities without prejudice as barred by the Eleventh Amendment.  We will grant defendant Rickard summary judgment as to all of Korman's claims against him.  We will grant defendant Scochin summary judgment as to all of Korman's state-law claims, as to her substantive due process claims, her Fourth Amendment malicious prosecution claims, and her Fourth Amendment claim based on his failing to tell her that her registration was expired.  We will deny defendant Scochin summary judgment as to Korman's First Amendment claim, her Fourth Amendment claim based on the traffic stop, her Fourteenth Amendment stigma-plus due process claim, and her Fourteenth Amendment due process claim based on fabricated evidence.  We will grant defendant Scochin leave to file another motion for summary judgment as to the remaining claims.  An appropriate order follows.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge